PUBLIC SERVICE COMMISSION OF MISSOURI, Appellant, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

In Banc, November 20, 1923.

1. **PUBLIC SERVICE COMMISSION: Powers.** The Public Service Commission is vested with such powers, and only such, as are conferred upon it by the Public Service Commission Law (Chap. 95, R. S. 1919). It is vested with the powers by that law expressly conferred, and all others necessary and proper to enable it to carry out fully and effectually all the purposes of the act.

2. ————: **General Order Without Hearing: Withdrawal of Trains.** The statutes do not empower the Public Service Commission to make a general order forbidding all railroad companies from discontinuing the operation of any passenger train, previously operated wholly within this State, without securing the permission of the commission for such change.

   *Held,* by WOODSON, C. J., dissenting, that there was no hearing upon the reasonableness of the order forbidding the discontinuance of the operation of any passenger train, and therefore the judgment of the circuit court dismissing the commission's petition for a judgment upholding said order should be affirmed.

3. ————: ————: ————: **Initiation of Change.** It is not ruled that the Public Service Commission is without power to make general rules or regulations other than those specified in the Public Service Act, but a general rule requiring its permission before any passenger train can be withdrawn from service cannot be characterized as one "necessary or proper to enable it to carry out fully and effectually all the purposes" of the act. On the contrary, the act as a whole, in so far as it is applicable to common carriers, demonstrates that the legislative intention was to leave with the carrier the initiation of both service and rates, which means that so far as service is concerned the carrier may, in the first instance, determine for itself the character and extent of the service, and may likewise make such changes therein from time to time as it may deem proper, and it is only when the service so inaugurated is or becomes "unreasonable, unsafe, improper or inadequate" that the commission may interfere.

*Held,* by JAMES T. BLAIR, J., concurring, with whom DAVID E. BLAIR, J., concurs, that the Public Service Commission is empowered to sue to require the restoration or to prevent the abandonment of a previous service rendered by a public utility and abandoned or about to be abandoned without the permission of the commission, and the petition in this case is broad enough to justify such relief; but as the trial was confined strictly to the validity of a general order forbidding all common carriers from discontinuing the operation of any passenger train without having first obtained the permission of the commission, and the assignments of errors cover nothing else except the validity of that order, the judgment of the circuit court holding the order invalid must be affirmed.

Appeal from St. Louis City Circuit Court.—*Hon. Robert W. Hall,* Judge.

AFFIRMED.

*L. H. Breuer,* General Counsel, and *James D. Lindsay,* Assistant Counsel, for appellant.

(1) The order required no more of respondent, and other like carriers, than that they should not discontinue a portion of the essential service to the public in this State, voluntarily undertaken by them, without a determination upon the facts in each instance, by the proper administrative body of the State, that public welfare and convenience—the conjoint interests of the carrier and of the public—justified the discontinuance. (2) The Public Service Commission has authority to make reasonable general regulations, or orders, applicable to railroad common carriers of passengers, adapted to promote public convenience and welfare, and conducive to orderly procedure by the carriers, in making important changes in the essential service undertaken by them in this State. R. S. 1919, sec. 10412, subdivs. 1, 3, 9; Sec. 10425; Secs. 10436, 10450, 10456, 10457, 10460, 10534, 10538. (3) The order was made upon due notice given; after a hearing in which respondent and other carriers appeared and were fully heard; was subject to

review in a direct proceeding, and it does not violate the due process clauses of the Federal and State constitutions. State ex rel. M. K. & T. Ry. v. Pub. Serv. Comm., 277 Mo. 175; Vandalia R. R. Co. v. Pub. Serv. Comm., 242 U. S. 255; Chicago & N. W. R. Co. v. Dougherty, P. U. R. 1917 F, 617. (4) The compulsory continuance of performance of form or portion of an essential service to the public, voluntarily undertaken by a public utility, pending a determination by competent authority of the question whether the service is a reasonable one to require, is not a taking of property without just compensation, nor a denial of due process of law, within the State and Federal constitutions. State ex rel. M. K. & T. Ry. v. Pub. Serv. Comm., 277 Mo. 175; State ex rel. Pub. Serv. Comm. v. Ry. Co., 279 Mo. 455; Mo. So. Ry. Co. v. Pub. Serv. Comm., 281 Mo. 52; State ex rel. v. Postal Tel. Co., 96 Kan. 298, 150 Pac. 544; Atlantic Coast Line Ry. Co. v. N. C. Corporation Comm., 206 U. S. 1. (5) The order was designed to require and promote adequate and reasonable passenger service to the public, within this State, by respondent and other carriers, and is not violative of the interstate commerce clause of the Federal Constitution or of Federal legislation. Sec. 10549, R. S. 1919; Article X Amendments, Const. United States; Atlantic Coast Line v. N. C. Comm., 206 U. S. 651; Mo. Pac. Ry. Co. v. Larabee Mills, 211 U. S. 612; Mo. Pac. Ry. Co. v. Kansas, 216 U. S. 262; Minnesota Rate Cases, 230 U. S. 411; Hennington v. Georgia, 163 U. S. 317; Cleveland C. C. & St. Louis Ry. Co. v. Illinois, 177 U. S. 516; Vandalia Railroad Co. v. Pub. Serv. Comm., 242 U. S. 255; Atlantic Coast Line Railroad Co. v. Georgia, 234 U. S. 290.; Chicago, B. & Q. Ry. Co. v. Wisconsin Railroad Comm., 237 U. S. 226. (6) The State through the Public Service Commission, may provide regulations adapted to compel the respondent and other like carriers to meet the requirements of adequate passenger service within the State. Lake Shore Railroad Co. v. Ohio, 173 U. S. 285; Mo. Pac. Ry. Co. v. Kansas, 216 U. S. 262; Mississippi

Railroad Comm. v. Illinois Central, 203 U. S. 335; State ex rel. v. Atlantic Coast Line Co., 60 Fla. 465. (7) The Public Service Commission Act, and orders made thereunder, are to be "liberally construed with a view to the public welfare, efficient facilities, and substantial justice between patrons and public utilities." R. S. 1919, sec. 10538; State ex inf. Baker v. K. C. Gas Co., 254 Mo. 515; State ex rel. v. Pub. Serv. Comm., 259 Mo. 704; State ex rel. M., K. & T. Ry. v. Comm., 277 Mo. 175. (8) Where a party whose interests are affected in an inquiry before the Public Service Commission, appears, participates in the inquiry, and makes full defense, he cannot complain of lack of notice of action taken within the scope of the inquiry. Baltimore & Ohio v. Pub. Serv. Comm., 110 S. E. 475; P. U. R. 1922D, 270. (9) Grounds of objection to an order of the commission must be specifically set forth in the application for a rehearing, and grounds not so set forth may not be urged or relied on thereafter in any court. R. S. 1919, sec. 10521; State ex rel. Mo. Pac. Ry. Co. v. Atkinson, 269 Mo. 634; State ex rel. Buffum Tel. Co. v. Pub. Serv. Comm., 272 Mo. 627. (10) The order does not undertake to regulate unduly the management and operation of the railroads of the State. The order, in its general nature, merely provides that an essential service, undertaken by the carriers, or a certain part of it, presumably necessary, shall not be discontinued without a showing that the discontinuance is just and reasonable. The opportunity to make that showing is given. The showing made, it must be presumed that the permission will be given. (11) The order is not an attempt to directly regulate interstate commerce, nor does it impose an undue burden thereon. Congress has not acted upon this subject. It is one within the police power of the State. The interstate commerce clause does not of its own force, and without legislation by Congress, impair the authority of the states to establish reasonable regulations for the promotion of the safety, convenience and welfare of their people. Chicago Ry. Co. v. Arkansas, 219 U. S. 465; New

York Railroad v. New York, 165 U. S. 631; W. U. Tel. Co. v. Kansas, 216 U. S. 27; M., K. & T. Ry. Co. v. Haber, 169 U. S. 627; Chicago Ry. Co. v. Solan, 169 U. S. 133. The order does not in any manner forbid, or hamper by conditions, the carriers' right to continue to pursue their intestate commerce operations as heretofore. Buck Stove Co. v. Vickers, 226 U. S. 205; Crutcher v. Kentucky, 141 U. S. 47; Bowman v. Chicago Ry. Co., 125 U. S. 465; Leisy v. Hardin, 135 U. S. 100. If a train is an interstate train operating within the State of Missouri, the order does not undertake to make it continue to operate interstate or to cease to do so. (12) This suit is based upon Section 10473, Revised Statutes 1919, and the ordinary rules applicable to mandamus are not applicable here. The section gives character to the procedure.

*W. F. Evans, E. T. Miller* and *Frank H. Farris* for respondent.

(1) The commission is an inferior tribunal, possessing limited powers, and it is essential to the validity of its orders that it proceed in conformity with the statute of its creation. Any material deviation therefrom makes void an order, though the subject-matter be within the commission's jurisdiction. State ex rel. v. Comm., 270 Mo. 429; A. T. & S. F. Ry. Co. v. Comm., 192 S. W. 460; L. & N. Railroad Co. v. Commonwealth, 226 S. W. 113; State ex rel. v. Railway, 179 N. W. 378. (2) The order of the commission was made pursuant to an order to show cause which omitted the subject-matter of the order here involved, and was made without a sufficient evidentiary basis. The order deprived respondent of its property without due process of law in violation of Section 1, Article XIV, of the Federal Constitution. It is therefore void. Lusk v. Atkinson, 268 Mo. 109; S. W. Mo. Ry. Co. v. Comm., 281 Mo. 52; A. T. & S. F. Ry. Co. v. Comm., 192 S. W. 460; Wisconsin Ry. Co. v. Jacobson, 179 U. S. 287; I. C. Commission v. Great Northern Ry. Co., 222 U. S.

541; State ex rel. Navigation Co. v. Comm., 224 U. S. 510; I. C. Commission v. L. & N. Railroad Co., 227 U. S. 88; Florida Ry. Co. v. United States, 234 U. S. 167; L. & N. Railroad Co. v. United States, 238 U. S. 1; Great Northern Ry. Co. v. State, 238 U. S. 340; Seaboard Air Line v. Comm., 240 U. S. 324; State ex rel. v. A. C. L. Railroad Co., 81 So. 489; In re Rutland Railroad Co., 64 Atl. 233; In re Coal Rates, 171 Pac. 506; Muskogee Gas Co. v. State, 186 Pac. 730. (3) The order is void because it does not show on its face the necessary jurisdictional facts to constitute a valid order. Leslie v. St. Louis, 47 Mo. 474; Chicago Ry. Co. v. Young, 96 Mo. 39; Seafield v. Bohne, 169 Mo. 537; State ex rel. v. Comm., 270 Mo. 547; State ex rel. v. Colbert, 273 Mo. 198; State ex rel. v. Gill, 220 S. W. 978; Eaton v. St. Charles, 8 Mo. App. 177; State ex rel. v. Page, 107 Mo. App. 213; Chandler v. Reading, 129 Mo. App. 63; Grant v. Suttlefield, 138 Mo. App. 555; Rogers v. Davis, 194 Mo. App. 378; New York Railroad Co. v. Croy, 127 N. E. 146; Sec. 10456, R. S. 1919. (4) The order is void because it is an assumption by the commission of a right to manage and operate the railroads of this State. Gustin v. Frisco, 1 Mo. P. S. C. Rep. 232; State ex rel. v. Bronson, 115 Mo. 271; State ex rel. v. Railroad, 50 So. 425. (5) The order violates Section 8, Article I, of the Constitution of the United States, in that it attempts to directly regulate interstate commerce or impose an undue burden thereon. State v. Railroad, 212 Mo. 658; State v. Railroad, 238 Mo. 21; Leloup v. Port of Mobile, 127 U. S. 640; Crutcher v. Kentucky, 141 U. S. 47; W. U. Tel. Co. v. Kansas, 216 U. S. 1; Stuart v. Palmer, 74 N. Y. 183; State ex rel. v. Atlantic Coast Line, 60 Fla. 465. (6) The order of the commission is void and may be attacked directly or collaterally in any proceeding in any court wherein its validity is drawn in question. State ex rel. v. Colbert, 273 Mo. 198; Wells v. Wells, 279 Mo. 57; Thompson v. Pinnell, 199 S. W. 1011; Gray v. Clements, 227 S. W. 111; Ohio

Valley Co. v. Ben Avon Borough, 253 U. S. 287; Secs. 10434, 10473, 10535, R. S. 1919. (7) The burden of proof is on appellant and it has failed to meet the requirements to sustain that burden. State ex rel. v. Associated Press, 159 Mo. 410; State ex rel. v. Bridge Co., 206 Mo. 74; State ex rel. v. Hudson, 226 Mo. 239; State ex. rel. v. Thomas, 245 Mo. 65.; State ex inf. v. Gas Co., 254 Mo. 515; State ex rel. v. Stone, 269 Mo. 334; State ex rel. v. Mo. Pac. Ry. Co., 280 Mo. 456. (8) There is no evidence of finding of fact as the basis of the order, the lack of which makes the order void for want of jurisdiction in the commission. Wichita Co. v. Pub. Utilities Comm., 43 U. S. Sup. Ct. Rep. 55. (9) The order of the commission is void in that it is an attempt at a direct regulation of interstate commerce. The order must be considered as a whole, and its validity must be determined not upon what the commission desired to be done by it, but what may be actually done under it. A. C. L. Co. v. Horton, 207 U. S. 334; K. C. S. Ry. v. Kaw Valley District, 233 U. S. 78; Minnesota Rate Cases, 230 U. S. 401; McCabe v. A. T. & S. F. Ry., 186 Fed. 987; South Covington Ry. v. Covington, 235 U. S. 547; Walton v. State of Missouri, 91 U. S. 288; Hall v. DeCuir, 95 U. S. 488; Childs v. C. & O. Ry., 218 U. S. 76. (10) The Public Service Commission is not a legislative body and cannot assume or perform legislative functions. It is an administrative body, and the acts which it can lawfully perform are such as are authorized by law, and for the purpose of administering the law. If legislative functions were delegated to it by its act of creation, such act would be void. It must be in the performance of its duties, be clearly within the law, and they must be performed in the manner prescribed by law. Wichita Co. v. Pub. Utilities Comm., 43 U. S. S. C. R. 55; State ex rel. v. Postal Tel. Co., 96 Kan. 298; Pub. Serv. Comm. v. So. Ry., 279 Mo. 462.

RAGLAND. J.—On the 14th day of April, 1921, the Public Service Commission, hereinafter referred to as

the Commission, after notice and hearing, promulgated an order, to become effective July 5, 1921, "that no common carrier operating in the State of Missouri shall discontinue the operation of any passenger train . . . where such operation or service is performed in the State of Missouri, without securing the permission of this Commission for such change." Thereafter on December 13, 1921, the respondent, St. Louis-San Francisco Railway Company, without first having obtained the consent of the Commission and without having made any application therefor, notified the Commission that on December 18, 1921, it would discontinue certain local passenger trains, which for a number of years it had been operating between the city of St. Louis and the town of Newberg and between Springfield and Monett, all within the State of Missouri. Thereupon the Commission commenced this action in the Circuit Court of the City of St. Louis, wherein it seeks by mandamus to compel respondent "to continue to operate as now and heretofore lately operated its said local passenger trains . . . until and unless permission for the discontinuance of said trains be duly obtained by order of the Commission." The gravamen of the action, as disclosed by the petition, is the threatened violation by respondent of the Commission's order with respect to the discontinuance of passenger trains. The cause comes here on the Commission's appeal from the judgment of the circuit court, denying it relief on the ground that the order just referred to is invalid.

In its return to the alternative writ respondent asserts the invalidity of the Commission's order on a number of grounds; among others, that the "order is a general order which if valid would have the force and effect of law, the making of which is not within relator's jurisdiction." With respect to this the position of the Commission is tersely set forth by its general counsel in his brief as follows:

"The order here involved is a regulation as to future conduct, and legislative in its nature. It is a public policy

formulated and announced, authorized by virtue of the general and special powers granted to the Commission. It is practical, and is necessary in the orderly performance by the Commission of its duty to supervise the performance of this essential duty of the carriers.

"It is an aid in procuring a speedy and authoritative determination of a question important alike to the carrier and its patrons.

"It is designed to prevent the carrier from unauthorized action in disregard of the convenience of the public, and equally so, to relieve, in an orderly way, the carrier from a service which may be, by change of conditions, burdensome out of proportion to its benefits.

"The carrier cannot conclusively determine these questions for itself, without a hearing of the interests of the public.

"The sudden, unexplained discontinuance of a passenger train, long in voluntary operation, upon regular schedule for the service and convenience of the public, is a decision by one of the parties in interest without a hearing of the other party."

It thus appears that the principal question presented for determination is whether the Commission is empowered to make general orders of the character of the one involved here, operative in the future, and applicable alike to all common carriers by rail. There is little doubt but that the Legislature could have delegated authority to the Commission to make such a rule and regulation had it seen fit to do so. [State v. Atlantic Coast Line R. R. Co., 56 Fla. 617; 6 R. C. L. 177.] The question is, did it?

The Commission is vested with such powers, and only such, as are conferred upon it by the Public Service Commission Law. [Chap. 95, R. S. 1919.] By that law it is vested with the powers therein expressly conferred and all others necessary and proper to enable it to carry out fully and effectually all the purposes of the act. [Sec. 10412, R. S. 1919.] Looking to those provisions of the

statute dealing solely with the subject of the investiture of jurisdiction with respect to railroads, we find: "The jurisdiction, supervision, powers and duties of the Public Service Commission herein created and established shall extend under this chapter . . . to all railroads within this State, . . . and to the person or corporation owning, leasing, operating or controlling the same." [Sec. 10425, R. S. 1919.] "The Commission shall have the general supervision of all common carriers, railroads, . . . railroad corporations, . . . and shall have power to and shall examine the same and keep informed as to their general condition, their capitalization, their franchises and the manner in which their lines and property, owned, leased, controlled or operated are managed, conducted and operated, not only with respect to the adequacy, security and accommodation afforded by their service, but also with respect to their compliance with all the provisions of law, orders and decisions of the commission and charter requirements." [Sec. 10452, R. S. 1919.] These general provisions are followed by more specific ones prescribing the methods and procedure to be followed in the exercise of the power of supervision so conferred. From these it appears that the power may be exercised, broadly speaking, in two ways: first, through general orders applicable to all railroad carriers alike, and, second, through orders made in specific cases, based on findings of fact therein, after notice and hearing. With reference to the first, the statute expressly authorizes the Commission by general rules and regulations: (1) to prescribe the form of schedules showing the rates, fares and charges for the transportation of passengers and property within this State, and to modify the requirements of Section 10439 in respect to the publishing, posting and filing of such schedules, applicable to special or peculiar circumstances or conditions (Sec. 10438); (2) to prescribe the form of annual and periodic reports to be made by common carriers and the character of information to be contained therein (Sec. 10453); (3) to pre-

scribe the forms of account, records and memoranda to be kept by railroad corporations (Sec. 10461); (4) to regulate the furnishing and distribution of freight cars to shippers, the switching of the same for the loading and unloading thereof, the demurrage charges in respect thereto, and the weighing of cars and property offered for shipment or transported by any common carrier (Sec. 10447, subdiv. 2); (5) to provide the time within which express packages will be received, gathered, transported and delivered at destination, and the limits within which express packages shall be gathered and distributed without extra charge (Sec. 10447, subdiv. 3); and (6) to provide for the transporting and moving of the car, device or facility used for testing track scales (Sec. 10448). The Commission is also authorized to prescribe, within defined limits, rules and regulations with respect to the issuance of stocks and bonds, notes and other evidences of indebtedness by railroad corporations and common carriers (Sec. 10463). The statute is voluminous and many of its provisions are not entirely free from ambiguity, but on its face the subject-matters above enumerated appear to be the only ones with respect to which it expressly authorizes the Commission to make general rules and regulations with reference to common carriers. Such rules, if reasonable and conformable to the general purposes of the statute, lie within the discretion of the Commission. All other orders expressly authorized must be made in conformity with a definite course of procedure.

The procedure above referred to consists of an investigation by the Commission, of its own motion or upon complaint, in which, after due notice to the common carriers to be effected thereby, a hearing is had and a finding of facts is made on the evidence adduced thereat. Such finding constitutes the sole basis of any order that may be made as a result of the investigation. Under the statute these investigations, generally speaking, deal with the correlative subjects of service and charges.

"The    Commission    may  . . .    make    inquiry
. . . as to any act or thing done or omitted to be
done by any common carrier  . . .  [alleged to be]
in violation of any provision of law or in violation of any
order or decision of the Commission" (Sec. 10455). If,
after a hearing, it finds "that the regulations, practices,
. . . or service of any such common carrier  . . .
in respect to transportation of persons and property
. . . are unjust, unreasonable,  . . .  improper or
inadequate, it shall determine the just, reasonable,
. . . adequate    and    proper    regulations,    practices
. . . and service to be observed and used  . . .
and prescribe the same by order" (Sec. 10456, subdiv.
2). If it is of the opinion, after a hearing, "that the
rates, fares or charges demanded, charged or collected
by any common carrier,  . . .  or that the regulations
or practices of such common carrier  . . .  affecting
such rates, are unjust, unreasonable, unjustly discrimi-
natory or unduly preferential,  . . .  the Commission
shall  . . .  determine the just and reasonable rates,
fares and charges to be thereafter observed  . . .  and
shall fix the same by order" (Sec. 10456, subdiv. 1).

In conducting the hearings the Commission does not
sit as a legislative committee for the purpose of formulat-
ing a "public policy" and putting it into effect by the
issuance of general rules "legislative in  . . .  na-
ture." Viewed from this particular angle it is to be
regarded as a *quasi*-judicial body; specific acts of omis-
sion or commission on the part of common carriers
alone are the subjects committed to it for investigation,
and its order made pursuant thereto can have no greater
applicability.

It is not necessary to hold, and we do not hold, that
the Commission is without power to make general rules
or regulations other than those specified in the statute.
It is entirely conceivable that the promulgation of others
are "necessary or proper to enable it to carry out fully
and effectually all the purposes" of the act. But a gen-
eral rule requiring its permission before a passenger

train can be withdrawn from service cannot be so characterized. A consideration of the Public Service Commission Law as a whole, so far as applicable to common carriers, convinces us that it was the intention of the Legislature to leave with the carriers the initiative as to both service and rates. There are certain restraints imposed by other statutory provisions in regard to rates, fares and charges, but so far as service is concerned the carriers may in the first instance determine for themselves its character and extent, and may likewise make such changes therein from time to time as they deem proper. It is only when the service so inaugurated or furnished is, or becomes, "unreasonable, unsafe, improper or inadequate" that the Commission may interfere. [Secs. 10455, 10456, 10460.] These views are not in conflict with State ex rel. Pub. Serv. Comm. v. Missouri South. Ry. Co., 279 Mo. 455, in which it was held that a railroad company cannot wholly abandon the operation of a part of its road without first obtaining the consent of the Commission.

As the general order in question was unauthorized by the statute it is void. It follows that the judgment of the circuit court should be affirmed. It is so ordered. *Graves, Walker* and *White, JJ.,* concur; *James T. Blair, J.,* concurs in a separate opinion, in which *David E. Blair, J.,* concurs; *Woodson, C. J.,* dissents in a separate opinion.

JAMES T. BLAIR, J. (concurring).—The manner of the trial in the circuit court and that of the presentation here raise the single question concerning the validity of the general order of the Public Service Commission. I agree that this order is without effect. In my opinion the Commission is empowered to sue to require the restoration or to prevent the abandonment of a previous service rendered by a public utility and abandoned or

about to be abandoned without permission of the Commission. The petition in this case might justify a judgment for relief but the trial was confined strictly to the validity of the order, and the assignments of error cover nothing else, insofar as a basis of recovery is concerned. For these reasons I concur. *David E. Blair, J.,* concurs.

WOODSON, C. J. (dissenting).—This suit was instituted in the Circuit Court of the City of St. Louis by the Public Service Commission (which will hereafter be designated as the Commission) against the respondent to enforce the observance of an order made by the Commission regarding the regulation of railroad common carriers within the State of Missouri.

The trial court decided against the Commission, and after unsuccessfully moving for a new trial, the Commission duly appealed the cause to this court. The facts of the case are as follows:

The order made by the Commission provided, among other things, that no railroad corporation should discontinue the service of any passenger train operated by it in this State, without first submitting to the Commission an application for the withdrawal or discontinuance of such train and receiving the approval of the Commission.

On the 7th day of January, 1921, the Commission made an order, upon its own motion, wherein it was recited that if appearing to the Commission that it was the practice of the railroad common carriers "to change the schedule times of running passenger trains, to withdraw passenger trains from service, to change the hours during which freight and passenger stations are kept open for the transaction of business with the public, to withdraw telegraphic facilities from stations, and change regular open stations to pre-pay stations, without regard to the interests of the public, and without submitting such changes to the Commission before putting the same into

effect," it was ordered that each and every common carrier operating within the State of Missouri be required to "show cause why an order should not be issued prohibiting said common carriers from making any changes in its practices and regulations relative to the scheduled time of the operation of its passenger trains at any station, the change in hours of service for serving the public at its freight and passenger stations, the withdrawal of telegraphic facilities from its stations and the closing or abandoning of any station without first securing the permission of this Commission for such change."

A time and place of hearing was set, and notice thereof given to the various carriers, including respondent. A hearing was had on the 7th day of February, 1921, at which the respondent and other carriers appeared and were heard, and all the testimony and proceedings had at said hearing taken and reduced to writing.

The hearing was informal in character, and consisted of questions and answers, oral statements, admissions, arguments and suggestions *pro* and *con* between witnesses, attorneys and other representatives of the carriers, and the members of the Commission.

Afterward, on the 14th day of April, 1921, the Commission made report of its findings and conclusions, and entered an order thereon.

The Commission in its report stated the various matters before it for determination, in the following subdivisions:

"1.  The changing of the schedule time of passenger trains.

"2.  The discontinuance of passenger trains.

"3.  The discontinuance of stops by passenger trains at particular stations.

"4.  The closing or abandoning of a station (the withdrawal of an agent).

"5.  The withdrawal of telegraph facilities from any station.

"6. A change in the hours of employees serving the public."

At the hearing the greater portion of the time was given to consideration of the question: "The changing of the scheduled time of passenger trains," and the fact that such changes must often be made upon short notice to conform to changes by other carriers at terminal points.

The Commission so stated in its report; and, in connection with that subject, and the relation between the subjects under subdivisions 1 and 3, stated:

"Subdivision 3, discontinuance of a passenger train, is shown to be purely a matter of economical operation. The schedule may be put forward or backward, in order to meet connecting trains at terminals or to provide meeting places for other trains, but the complete withdrawal of the operation of such train is not, at any time, mandatory in order to provide connecting schedules or expedite business."

The Commission found that "the carriers should not be required to submit, for approval, changes in passenger train schedules nor change or withdrawal of telegraphic facilities from stations, but that the approval of the Commission should be secured before any of the following changes are made: Discontinuance of stops by passenger trains at particular stations, discontinuance of passenger trains, closing or abandoning of a station, or the change in the hours of employees, at stations, serving the public."

Thereupon, the Commission made its order, as follows:

"That no common carrier operating within the State of Missouri shall discontinue the operation of any passenger train, discontinue the stopping of any passenger train at any station, change any station from an open to a pre-pay station, close or abandon any station, nor change the hours of any employee serving the public,

where such operation or service is performed in the State of Missouri, without first securing the permission of this Commission for such change.''

The order was declared to be effective on and after May 1, 1921.

On the 28th day of April, 1921, the carriers, including respondent, filed their application for a change of the effective date of the order.

On said 28th day of April, 1921, the Commission by its order, Supplemental Order No. 1, for the purpose of giving the carriers additional time to determine their course in respect of acceptance of the order, extended the time when the order should be in effect to May 11, 1921.

On May 10, 1921, the carriers, including respondent, filed their application for a rehearing. Afterward the Commission heard oral arguments of counsel for the carriers, and thereafter, on May 31, 1921, the Commission made its Supplemental Order No. 2, whereby it made July 5, 1921, the effective date of its Order No. 2, and made the final order involved, in the form following:

''That no common carrier operating in the State of Missouri shall discontinue the operation of any passenger train, discontinue the stopping of any passenger train at any station, change any station from an open to a pre-pay station, close or abandon any station nor change the hours during which the public is served at any freight or passenger station (including ticket offices apart from the depot), where such operation or service is performed in the State of Missouri, without first securing the permission of this Commission for such change.''

Upon the trial it was admitted by respondent that it had received copies of Supplemental Order No. 1, and of Supplemental Order No. 2, above mentioned.

On the 13th day of December, 1921, the respondent advised appellant Commission that on and after December 18, 1921, it would discontinue the operation of its local passenger trains, Nos. 11 and 12, between St. Louis and

Newburg, and Nos. 16 and 17, between Springfield and Monett, and do so without applying for or obtaining the consent of the Commission.

On the 16th day of December, 1921, the Commission made an order, which directed its general counsel to institute the suit herein on behalf of the Commission; and on the 17th day of December, 1921, this suit was filed.

Upon the trial it was admitted that the trains involved, and above mentioned, were operated wholly within this State.

The question of fact whether it might be reasonable and proper to permit the discontinuance of these particular trains was not made an issue. The essential question was the validity of the order as a general order, requiring application, investigation and consent, in any given instance, as a prerequisite to lawful discontinuance of service of a passenger train.

The court held that the Commission was without power to make such an order, and dismissed the petition. Hence this appeal.

We are required to go a little more into detail as to the facts of the case in order to clearly present the proposition presented by counsel for respondent for determination, which appear to be:

On October 11, 1920, the Commission issued an order prohibiting a common carrier, operating within this State, without first securing permission of the Commission: 1, from making any change in its passenger train schedules; 2, from making any change in the hours when its agents and other employees serving the public were on duty; 3, from withdrawing stops of any passenger train; 4, from changing the status of an agency station.

The foregoing order was set aside by the Commission, and on January 7, 1921, a new order was issued ordering and directing each and every common carrier operating within the State of Missouri to show cause, on a date fixed, why an order should not be issued pro-

hibiting said common carrier, without first securing the permission of the Commission, from making any changes in its practices and regulations relative to: 1, The scheduled time of the operation of its passenger trains; 2, the stopping of its passenger trains at any station; 3, the change in hours of service for serving the public at its freight stations; 4, the withdrawal of telegraphic facilities from its stations; 5, the closing or abandoning of any station.

Obedient to the order last aforesaid the carriers appeared, a hearing was had and an order resulted, subsequently changed by Supplemental Order No. 2, prohibiting each common carrier operating in the State of Missouri from (without first securing the permission of the Commission): 1, discontinuing the operation of any passenger train; 2, discontinuing the stopping of any passenger train at any station; 3, changing any station from an open to a pre-pay station; 4, closing or abandoning any station; 5, changing the hours during which the public is served at any freight or passenger station (including ticket offices apart from the depot) where such operation or service is performed in the State of Missouri.

A motion for rehearing by the carriers, including respondent, attacked the order of the Commission on the grounds, among others, that the order was unauthorized by the Public Service Law of Missouri, that its enforcement would impose an unreasonable burden upon the carriers, that the Commission is not vested with jurisdiction or power to make such an order, that the order is in violation of the Commerce Clause of the Federal Constitution, and that the order is in violation of Section 1, of Article XIV of the Amendments to the Constitution of the United States.

On December 18, 1921, respondent discontinued the operation of its passenger trains Nos. 11 and 12 between St. Louis, Missouri, and Newburg, Missouri, and its pas-

senger trains Nos. 16 and 17 between Springfield, Missouri, and Monett, Missouri. This action resulted in an order of the Commission directing its general counsel to institute suit in the Circuit Court of the City of St. Louis to enforce the provisions of the Commission's order hereinabove set forth. A petition was filed, to which answer was made, and the cause was heard in the Circuit Court of the City of St. Louis January 5, 1922. At the trial the various orders of the Commission and the testimony before the Commission were introduced in evidence, and certain evidentiary admissions were made concerning matters not appearing in the records of the Commission.

The evidence taken before the Commission consisted of the testimony of C. B. Bee, an employee of the Commission in charge of its department of transportation, testifying for the Commission, and J. E. Hutchison, general manager of respondent, and J. F. Murphy, general manager of the Missouri Pacific Railway Company, testifying for the carriers.

Mr. Bee stated to the Commission the purpose of the proceedings and made no reference to the subject of *discontinuing the operation of passenger trains.* On cross-examination he stated that four propositions were involved, namely, the scheduled time of the operation of passenger trains, the stopping of passenger trains, the change in hours of service for serving the public at freight and passenger stations, and the withdrawal of telegraphic facilities or closing or abandoning a station. The testimony was confined to these issues, and as shown by Mr. Bee's testimony and the testimony of Mr. Murphy the question of discontinuing a train altogether did not appear to be a matter for the consideration of the Commission.

The first three points urged by counsel for appellants read as follows:

"First: The order required no more of respondent, and other like carriers, than that they should not discontinue a portion of the essential service to the public in

this State, voluntarily undertaken by them, without a determination upon the facts in each instance, by the proper administrative body of the State, that public welfare and convenience—the conjoint interests of the carrier and of the public—justified the discontinuance.

"Second: The Public Service Commission has authority to make reasonable general regulations, or orders, applicable to railroad common carriers of passengers, adapted to promote public convenience and welfare, and conducive to orderly procedure by the carriers, in making important changes in the essential service undertaken by them in this State. R. S. 1919, sec. 10412, subdiv. 1, 3 and 9; Sec. 10425; Secs. 10436, 10450, 10456, 10457, 10460, 10534, 10538.

"Third: The order was made upon due notice given; after a hearing in which respondent and other carriers appeared and were fully heard; was subject to review in a direct proceeding, and it does not violate the due process clause of the Federal and State Constitutions, and cite: State ex rel. M. K. & T. v. Pub. Serv. Comm., 277 Mo. 175; Vandalia Ry. Co. v. Pub. Serv. Comm., 242 U. S. 255; Chicago & N. W. Ry. Co. v. Dougherty, 163 N. W. (S. D.) 715."

For the purposes of this case, it might be conceded, without deciding the points, that the three points made by counsel for the Commission are sound declarations of the law of this State, but such conclusions would not go to the real heart of the proposition presented by counsel for the respondent. Their contention is that "there was no evidence introduced tending to support the finding of fact as the basis of the order complained of, the lack of which makes the order void for want of jurisdiction in the commission."

That part of the complaint which counsel for the Commission contends the respondent was violating refers to "discontinuing the operation of local passenger trains Nos. 11 and 12 running between St. Louis and Newburg, and Nos. 16 and 17 running between Springfield

and Monett;" all of which are between points in the State of Missouri.

The only evidence that the record discloses that was introduced by the Commission in support of this particular part of the order made by it, was the testimony of Mr. C. B. Bee, an employee of the Commission and in charge of the transportation department thereof. He stated to the Commission the purpose of the proceedings and made no reference to the subject of discontinuing the operation of passenger trains. On cross-examination he stated that four propositions were involved, and this testimony has already been set forth in the statement of this case. Counsel for respondent contend that even though several issues may have been involved in any litigation, yet if the decision is based upon only one of them, parol evidence is admissible to show which one of them it was based upon, and which ones were not adjudicated. [Gardner v. Gas. Co., 154 Mo. App. 666, l. c. 685; Hickerson v. City of Mexico, 58 Mo. 61, l. c. 64.]

On page 65 of the case last above cited this court said: "If it appears prima-facie that a question has been adjudicated, it may be proved by parol testimony that such question was not in fact decided in the former suit. Where matters could have been proved in a former action, the presumption is that they were proved, but this presumption may be rebutted and overthrown. [Freeman, Judg., secs. 273, 274, and cases cited; Packet Co. v. Sickles, 24 How. 333, 5 Wall. 580; Bell v. Hoagland, 15 Mo. 360; Clemens v. Murphy, 40 Mo. 122; Wright v. Salisbury, 46 Mo. 26; Wells v. Moore, 49 Mo. 229; Spradling v. Conway, 51 Mo. 51.]"

In the case of Wichita Co. v. Pub. Utilities Com., 43 U. S. Supt. Ct. Rep. 51, l. c. 54, Mr. Chief Justice TAFT, in discussing the reasonableness of rates fixed by the Commission, said: "The majority opinion in the Circuit Court of Appeals in maintaining the validity of the order in this case relies on Section 18 of the act, which provides

that all orders, rates, etc., fixed by the Commission shall be in force thirty days thereafter, and shall be prima-facie reasonable until changed by the Commission or by a court, and holds from this that it must presume that there was substantial evidence to warrant the findings. But, as we have seen, there is no finding of reasonableness or unreasonableness. Nor can we suppose that the presumption was to obtain until there was such a finding.''

The same rule applies to the facts of this case. The record fails to show that there was any evidence heard, or evidence taken, to show the reasonableness of the order of the Commission in prohibiting the discontinuance of the trains in question: in fact, there was no hearing at all on that issue (No. 1) mentioned in the specifications it called upon the respondent to answer, which reads: ''1. Discontinuing the operation of any passenger train.''

And since there was no hearing upon this issue in this case, in our opinion the judgment of the circuit court was proper and should be affirmed.