**STATE ex rel. WABASH RAILROAD COMPANY, a Corporation, Plaintiff-Respondent,**

v.

**PUBLIC SERVICE COMMISSION of Missouri et al., Defendants-Appellants.**

No. 23818.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Glenn D. Evans, Gen. Counsel, Thomas J. Downey, Asst. Gen. Counsel, Jefferson City, for appellants.

Charles H. Howard, Hendren & Andrae, Jefferson City, for respondent.

SPERRY, Commissioner.

Plaintiff, Wabash Railroad Company, filed petition in Circuit Court of Cole County, Mo., seeking its writ of certiorari to test the legality of the report and orders of the

defendants, Public Service Commission of Mo., whereby plaintiff was ordered to discontinue the dualization of its station at Hallsville, Mo., with its station at Sturgeon, Mo., and to maintain a full time station agent at Hallsville. After hearing evidence the Court entered its order reversing and setting aside the report and order of the Commission, and remanding the cause to the Commission for further consideration as future circumstances and events may warrant. The Commission appeals.

This case grows out of action taken by the Wabash in dualizing its services at its station at Hallsville, with those of its station at Sturgeon, some fifteen miles therefrom. The dualization of services consists of the maintenance of one station agent to care for both stations, said agent to serve at Hallsville from 1:30 P.M. until 4:15 P.M., each work day. Previously, Wabash had maintained a full time agent at Hallsville. The City of Hallsville, and a resident of that area, complained to the Commission, protesting the action of Wabash in this regard. The Commission docketed the case as No. 14775, and proceeded to a full hearing of evidence by all interested parties. It ordered that Wabash restore the facilities existing at Hallsville prior to its dualization of services by maintaining a full time station agent.

Prior to docketing and hearing this case, the Commission had entered two orders touching station agent services to be rendered at Hallsville but neither order is of significance here, except as background. This hearing was based on a specific complaint made long after the previous orders were made and after the dualization had become an accomplished fact.

■ The reviewable question in this case is the reasonableness or lawfulness of the order. We may determine whether or not it was reasonable or, conversely, whether it was unreasonable, arbitrary, or capricious. For the order to have been reasonable it must have been based upon competent and substantial evidence upon the whole

record. State ex rel. City of West Plains v. Public Service Commission, (Mo.), 310 S.W.2d 925, 929.

What Wabash did, of which complaint was made (and the hearing followed), was to place the Hallsville station in charge of a part time agent, assigned to serve from 1:30 P.M. until 4:15 P.M. each work day, make it a telegraphic station instead of non-telegraphic, as it had been, and to make available to its patrons free telephone service from Hallsville to certain other nearby stations, including the one at Sturgeon where the Hallsville agent serves during the forenoon. Previously, there had been no telephone service provided, the agent was not a telegrapher and, therefore, could not maintain contact with other agencies throughout the system for the convenience of customers.

■ Wabash had the right to initiate the services it would render, "There are certain restraints interposed by other statutory provisions in regard to rates, fares, and charges, but, so far as service is concerned, the carriers may in the first instance determine for themselves its character *and extent, and may likewise make such changes therein from time to time as they may deem proper.* It is only when the service so inaugurated or furnished is, or becomes, 'unreasonable, unsafe, improper or *inadequate*' that the Commission may interfere". (Emphasis ours). Public Service Commission v. St. Louis, San Francisco Ry. Co., 301 Mo. 157, 256 S.W. 226, 228 (in Banc). Applying the above rule to this case, the question is: Is the service which is being maintained for the public at Hallsville safe, adequate and reasonable? If, under the whole record, it is safe, reasonable and adequate, then the order of the Commission in this case is unreasonable, arbitrary, and void. If it is reasonable, safe, and adequate, then it must be said that public convenience and necessity is being served and that any interference with Wabash's conduct of its business is arbitrary, unreasonable and unlawful.

The record on behalf of complainants is voluminous. It would not be helpful to set out the testimony of each witness in detail.

Mr. Quisenberry thought the service was bad for the community, did not conform to his own individual time table, was not as convenient for him as it would be to have a full time agent. Mr. Wilmoth, school superintendent, said it would be more convenient for him to send assistants to the depot to pick up school supplies (occasional and small quantities) in the A.M. instead of P.M. Mr. Elkins occasionally received cattle by rail, and afternoon services not being convenient for him; but, in 1960, 1961, prior to the station agent change, he used the Centralia station, on the mainline, to receive shipments, instead of Hallsville, on the branch line. Probably this was due to the fact that cattle arriving at Centralia might frequently lay over several hours before the branch line train left for Hallsville. Miss Brown objected to the change because she could not purchase tickets at the station in the mornings but only in the afternoons, although tickets could be purchased on the train when it arrived. (Hallsville is a flag station). Mrs. Jones' testimony was largely to the same effect. Mr. McKenzie thought the new service not so convenient as the old. Mr. Isely, secretary of the Chamber of Commerce of Columbia expected great increases in population and business in Boone County, and thought that services should be provided therefor. Mr. Jones received carloads of phosphate. The former agent would call him when a car arrived (although the services of the Wabash did not so provide) and he opposed the change because he would, in future, only receive notice by mail, as the service rendered by *Wabash* had always provided. Mrs. Gallenmore sent her children on the train occasionally and the agent had personally looked after them but, with the new service, she would personally have to perform that duty.

Mr. Leu and Mr. Collingwood, officials of Wabash, gave testimony based upon their knowledge, gained in the performance of their duties, and upon the business records of Wabash. This testimony was to the effect that, during the period from January 1, 1958 through September, 1961, (45 months) 19 carloads and 17 less than carload lots of freight originated at Hallsville; that 160 carloads and 549 less than carloads were received; that the total gross revenue received by Wabash therefrom was $21,347.73; that the total minimum station expense at Hallsville during this period was $18,648.58; that the total daily *average* time required of a station agent to transact Wabash business at the station is twenty minutes. The evidence did not disclose what amount of the above revenue received by Wabash was net to, or assignable to the Hallsville station, out of the gross for the entire system. The passenger revenue was negligible.

There was evidence to the effect that Wabash could save $6,000.00 per year through dualization; that no complaint on service rendered since the dualization was instituted had been received except from those appearing at this hearing; that Boone County Oil Co., which shipped 90 of the 160 carloads received at Hallsville during the mentioned period, had specifically approved dualization; that the next largest customer was complainant Jones; that the other principal carload customers were Missouri State Highway Commission (road materials); Mr. Elkins, (cattle) and three others; that, of the 19 carloads originating at the station during that period, 18 were shipped by a *logging company*.

There was evidence to the effect that Wabash was endeavoring to consolidate services throughout its system, in the interest of economy; that such action has been and is being encouraged by the public; that such dualization has occurred in Missouri, affecting twelve stations; that this was done without prior order by the Commission; that no complaint, save this, has been filed; that the action here taken was done with the consent and approval of the

labor unions thereby affected; that, in *some* instances on the Wabash system, one agent is caring for three or four stations.

Under the evidence here, it does not appear that service inaugurated and maintained by Wabash, by dualizating the station, is 'unreasonable, unsafe, improper or inadequate'. That is the only reasonable conclusion to be reached, based upon the competent and substantial evidence on the whole record. That being true, the Commission is held to have acted, in this case, arbitrarily, capriciously, and unlawfully. Its order is not supported by competent and substantial evidence upon the whole record, and is void.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.
All concur.