STATE EX REL. CITY OF ST. LOUIS, a Municipal Corporation, Appellant, v. PUBLIC SERVICE COMMISSION ET AL.—73 S. W. (2d) 393.

Court en Banc, June 15, 1934.*

*NOTE: Opinion filed at September Term, 1933, April 18, 1934; motion for rehearing filed; motion overruled at May Term, 1934, June 15, 1934.

*Julius T. Muench, Charles M. Hay* and *Forrest G. Ferris, Jr.,* for appellant.

450

*D. D. McDonald,* General Counsel, and *G. C. Murrell,* Assistant Counsel, for Public Service Commission.

*Ragland, Otto & Potter* for Utilities Light & Power Company.

TIPTON, J.—This case was argued before this court, both in division and en banc. We adopt the statement of facts of the divisional opinion as it fairly and correctly states the facts as found in the record. It is as follows:

"This is an appeal from the judgment of the Circuit Court of Cole County, affirming, on certiorari, the orders of respondent commission in two cases, being commission cases Nos. 6722 and 6723, in which the commission granted the applications of Utilities Power and Light Corporation for authority to purchase, acquire and hold more than ten per cent of the shares of stock 'at any time outstanding'

of two Missouri public utility corporations. The city of St. Louis was permitted to and did intervene, objecting to the granting of the applications, and is the appellant herein. The following facts quoted from appellant's brief are conceded.

" 'Said applications were brought under Section 5195, R. S. Mo. 1929, and involve the right of a foreign corporation, unlicensed to do business in this State, to acquire and hold, under the particular facts in this case, more than 10 per cent of the stock of two domestic utilities operating in St. Louis.

" 'Specifically, the commission, in the order here complained of, authorized the Utilities Power and Light Corporation, a Virginia corporation, to purchase, acquire, take and hold more than ten per cent of the 13,200 shares of the issued and outstanding capital stock of Laclede Power and Light Company, represented by voting trust certificates of said company, and more than 10 per cent of the 107,000 shares of common stock and 25,000 shares of preferred stock of Laclede Gas Light Company. Actually, at the time the applications were filed, the Laclede Gas and Electric Company (a whole owned subsidiary of Utilities Power and Light Company) owned approximately 9,450 shares of common stock of Laclede Power and Light Company, and 65,500 shares of common and 703 shares of preferred stock, of Laclede Gas Light Company.

" 'The Laclede Gas Light Company is a Missouri corporation, and renders a general gas service in the city of St. Louis, as a public utility. . . . The Laclede Power and Light Company is a Missouri Corporation, and renders a general electric business in the city of St. Louis, as a public utility, pursuant to franchise. This corporation was formed for the purpose of taking over the electric business formerly conducted by the Laclede Gas Light Company.

" 'The Laclede Gas and Electric Company was organized in 1922 or 1923, by Charles A. Munroe, about the time he acquired control of the Laclede Gas Light Company. This company is a Delaware corporation and has never been licensed to do business in Missouri.

" 'Pursuant to respondent commission's order of May 7, 1924, in case No. 3970, Laclede Gas and Electric Company is now the owner of more than 10 per cent of the capital stock, issued and outstanding, of Laclede Gas Light Company, to-wit, 65,513 shares of common and 703 shares of preferred stock. The actual holdings at the date of hearing in this cause were 65,517 shares of common and 873 shares of preferred, the difference being accounted for because of the difference in dates between the filing of the application and the hearing.

" 'Pursuant to respondent commission's order of December 23, 1926, in Case No. 5041, Laclede Gas and Electric Company. is now the owner of more than 10 per cent of the capital stock, issued and outstanding, of Laclede Power and Light Company, to-wit, 9452

shares of common stock, represented by voting trust certificates. Actually, at the date of hearing in this cause appealed from, the holding was 9,206 shares.

" 'The above holdings of Laclede Gas and Electric Company represent the controlling interest in both the Laclede Gas Light Company and Laclede Power and Light Company. Said Laclede Gas and Electric Company may, for convenience, be considered the first holding company.

" 'The Utilities Power and Light Corporation, a Virginia corporation, was organized in 1915, and its Certificate of Incorporation was amended on May 29, 1929. It is not licensed to do business in Missouri. In 1927 this corporation, which may be referred to as the second holding company, acquired full control (100% of the common stock) of Laclede Gas and Electric Company and therefore, control of Laclede Gas Light Company and Laclede Power and Light Company.

" 'The net effect of the applications which were granted in the consolidated cause here appealed from, is to transfer to Utilities Power and Light Corporation (the second holding company), the controlling interest of Laclede Gas and Electric Company (the first holding company) in both Laclede Gas Light Company and Laclede Power and Light Company, the two domestic operating utilities. As expressed by company witness, Mr. E. L. White: "The petitioner is simply asking the commission for authority to transfer the present authority granted to the Laclede Gas and Electric Company to the Utilities Power and Light Corporation, with the intent of dissolving the Laclede Gas and Electric Company, as it is no longer needed as a holding company in connection with these cases."

" 'Further, with reference to the Laclede Gas and Electric Company, company witness White testified:

" ' . . . The purpose in wiping out this company is because it is not needed, and to get away from paying the federal corporation tax; it is a worthless corporation in the present setup.'

"Mr. E. L. White, the 'company witness' referred to above, is comptroller of the Laclede Gas Light Company. He was called by the applicant and was the only witness who testified at the hearing.

"The applicant, Utilities Power and Light Corporation, does not now directly own any stock of the Laclede Gas Light Company nor, so far as the evidence shows, of the Laclede Power and Light Company. It has numerous subsidiary corporations and corporations which it controls through stock ownership throughout the country. Its charter powers are very broad. The enumeration of those powers cover six pages of the printed abstract of record. One of its subsidiaries is the Management and Engineering Corporation, a Delaware corporation, which it is conceded has been for several years maintaining an office and doing business in Missouri, and among

other things has rendered certain services to Laclede Gas Light Company in the nature of 'Management and engineering advice,' for which it is paid by the Utilities Power and Light Corporation. It also does construction work for the Laclede Gas Light Company for which that company pays it. Contracts for such work have not been let by competitive bidding, so far as Mr. White knew. The Laclede Gas Light Company, the Management and Engineering Corporation and the Utilities Power and Light Corporation (applicant) all have a hand in the making of those contracts, 'they all have a whack at it,' in the language of Mr. White, but just how the contracts are made is not explained. The Utilities Power and Light Corporation and the Laclede Gas and Electric Company have interlocking directorates and Mr. White testified: 'The same officers, I believe are officers in the Management and Engineering Corporation as in the Utilities Power and Light Corporation.'

"Mr. White was asked the purpose of having a holding company own more than ten per cent of the stock of the two domestic corporations and what benefit results therefrom to said companies or their customers, to which he replied:

"'Well, the holding company, by reason of its organization, owns not only the Laclede Gas Light Company and the Laclede Power and Light Company, but various other properties in the State of Missouri, as well as in other states, and they operate those properties, they finance them, and to all intents and purposes act the same as the majority of stockholders in the case of operating the property.

"'There are many advantages connected with the holding company, such as financing, purchasing, engineering advice and others. At the present time we are indebted to the Utilities Power and Light Corporation on unsecured notes for a considerable sum. We possibly could have obtained this money from banks in St. Louis, as we have done at times, but we didn't try. Our financing is done by the holding company. There are to be no further charges made by the Utilities Power and Light Corporation to the Laclede Gas Light Company and the Laclede Power and Light Company, that I know of, for financing, other than the interest costs.

"'The charges for supervision of the two subsidiary companies by the holding company, to the best of my knowledge, will not be any more than have always been made. At one hearing a year or so ago there was testimony relative to a charge of some two hundred thousand dollars a year by the holding company for alleged supervision, engineering, etc., and that charge was withdrawn so far as it would have figured as an operating expense. Such charges are still being made in approximately the same amount, that is, about $210,000 per year. That is a lump sum paid for all services and is not itemized.

"'The advantage of the holding company's purchasing power is

that by reason of centralizing the purchases for larger properties we receive greater quantity discounts than if the purchases were made by an individual company. This goes to the benefit of the consumer.'

"Mr. White was unable to state what economies had been effected since the first (the Delaware) holding company had acquired the controlling stock of the domestic companies or to state more definitely than as above quoted the services rendered by the holding company in return for the $210,000 charge. Being further pressed he said he did not know whether or not such payment to the holding company was 'just a blanket charge to the subsidiary companies in the nature of a bonus to the holding company.'

"The Laclede Gas Light Company has been maintaining a competent engineering staff which has not been reduced since the first holding company acquired its stock control. The cost of maintaining this engineering staff is presumably charged as operating expense in fixing rates.

"If the applications herein are granted the $210,000 annual charge will be continued as heretofore, the payments then being made to the Utilities Power and Light Company instead of to the present holding company. No change is contemplated in the relations between the domestic companies and the holding company or its subsidiary, the Management and Engineering Corporation, except the elimination of the present holding company which is not considered superfluous. Mr. White testified: 'If this application is granted the method of doing business will be the same as it has been in the past, under the management of the same persons.' He further testified that the expenses of the two domestic corporations would neither be increased nor reduced, that it will make 'no change whatever.' He also stated that the applicant wants, as requested in its applications, authority to 'acquire from time to time in the future any additional stock' of the domestic corporations which it might feel disposed to purchase.

"The commission found that 'the granting of the applications herein will not change the situation as regards the Laclede Gas Light Company and the Laclede Power and Light Company from that now existing. The Utilities Power and Light Corporation can control the operating companies just as effectively through its intermediary, the Laclede Gas and Electric Company, as it could by direct ownership of the stocks involved, therefore the mere transferring of the said stocks from the intermediary to the parent company can have no detrimental effect upon the public interest. The net result will be the elimination of a useless intermediate corporation and the possible saving of some taxes to the parent company.' The commission issued its orders granting the applications. On certiorari to the circuit court, sued out by the intervener, city of St. Louis, that court affirmed the action of the Commission and said intervener appealed."

I. The only question that the circuit court can determine on a writ of review, and by this court on appeal, is whether the order or decision of the commission is reasonable and lawful. [State ex rel. Union Electric Light & Power Co. v. Public Service Commission, 333 Mo. 426, 62 S. W. (2d) 742, and cases cited therein, and Sec. 5234, R. S. 1929, Mo. St. Ann., sec. 5234.] The burden of proof is upon the appellant to show that the order or decision of the commission is unreasonable or unlawful as the case may be. [State ex rel. Union Electric Light & Power Co. v. Public Service Commission, supra, and Sec. 5247, R. S. 1929.]

II. It is contended by the appellant, denied by the applicant, that the latter is doing business in Missouri in violation of Sections 4596, 4998, Revised Statutes 1929, through its subsidiaries, the Laclede Gas & Electric Company and the Management & Engineering Corporation. It is conceded that the applicant is not licensed to do business in Missouri.

The appellant to sustain its contention that the applicant is doing business in Missouri, relies upon the following facts developed by the evidence; that it owns all the stock of the Laclede Gas & Electric Company, which owns enough stock of the Laclede Gas Light Company and the Laclede Power & Light Company to control these two companies; that they have interlocking officers and directors; that "they finance them (that is the applicant finances the two local operating companies), and to all intents and purposes act the same as the majority of stockholders in the case of operating the property;" that all supplies for these two companies are purchased by the applicant; that the Laclede Gas Light Company has been paying approximately $210,000 as a holding company fee for management, engineering and supervision, and that this fee will be paid direct to the applicant if this sale of stock is approved; that the Management & Engineering Corporation, a Delaware Corporation, having offices in the Laclede Gas Light Company's building in St. Louis, is a subsidiary of the applicant; that primarily the Management & Engineering Corporation is rendering managerial and engineering advice to the Laclede Gas Light Company, but is paid for this service out of the $210,000 annual holding company fee paid to the Laclede Gas & Electric Company; that any construction work done by the Management & Engineering Corporation for the Laclede Gas Light Company is paid by the latter company to the former, and is let on competitive bids only when the Laclede Gas Light Company deems it "advisable;" and that there is no intention of discontinuing the relations between the Laclede Gas Light Company and the Management & Engineering Corporation, if the stock transfer is sustained.

For a foreign corporation to be doing business in this State, it is necessary that the business done "must be of such nature and char-

acter as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the State." [People's Tobacco Co. v. American Tobacco Co., 246 U. S. 79, 62 L. Ed. 587.]

The appellant does not contend that the applicant is doing business in this State through these subsidiaries as its agents.

We do not believe the facts relied upon by the appellant would warrant the conclusion that the applicant was doing business in this State. The title to the property of the two local operating companies are the Laclede Gas Light Company and the Laclede Power & Light Company. Their respective officers and directors manage and direct the business of these respective companies. A stockholder in these two operating companies manages or operates them in so far as he exercises his right in the election of their directors, and this is true even if the stockholder is a corporation. The fact that the applicant owns the controlling stock in these two operating companies and has the power to elect its board of directors, who in turn elect their officers or remove them from the places already held, does not make the applicant "operate these properties," even if the applicant "to all intents and purposes acts the same as the majority of stockholders in case of operating the property." Nor does the fact that the applicant and the two local operating companies have interlocking directors and officers prove that the applicant is doing business in this State. [Peterson y. C., R. I. & P. Ry. Co., 205 U. S. 364, 51 L. Ed. 841; Butterick Co. v. United States, 240 Fed. 539.] The fact that all the financing of the Laclede Gas Light Company is done by the applicant does not show that the applicant is doing business in this State. There is no showing that the applicant maintains an office in this State or that the loans were made or collected in this State. Nor does the fact that the applicant purchases all the supplies for the two local operating companies at Chicago show it was doing business in this State.

■ The appellant claims that the applicant is doing business in this State through its subsidiary, the Management & Engineering Corporation. These two corporations are distinct corporate entities. Assuming it to be a fact, that the applicant is doing business in this State through a subsidiary corporation, the Management & Engineering Corporation, does not prove that the applicant is doing business in this State because the appellant has failed to show that the Management & Engineering Corporation acts as the agent of the applicant. That is true, even though the applicant completely dominates this company. [Cannon Manufacturing Company v. Cudahy Packing Company, 267 U. S. 333, 69 L. Ed. 634.]

■ The appellant further contends that the applicant was organized for the purpose of purchasing and holding stock in other corporations, and the fact that it purchased the stock of the two

local operating companies from the Laclede Gas & Electric Company would make the applicant doing business in this State. In support of this proposition we are cited to the case of Shields v. Chapman, 240 S. W. 505, decided by the Kansas City Court of Appeals. In that case the court held that: "Plaintiff failed to prove that the note in suit was given as a part of a business transaction such as is defined as 'doing business' in this State within the meaning of the statute, and failed to prove that this transaction was anything more than an isolated one, therefore, the very foundation of his suit falls." That case does not support the appellant's contention. In this case the evidence fails to show that the purchase of the stock in question was consummated in this State, and even if it did, it would only show an isolated transaction, and therefore the applicant could not be doing business in this State within the meaning of the statutes.

We, therefore, hold that the appellant has failed to "show by clear and satisfactory evidence" as is required by Section 5247, supra, that the applicant was doing business in this State without a license.

III. The appellant further contends that the order of the respondent is unlawful for the reason "that the acquisition by an unlicensed foreign corporation of more than ten per cent of the stock of a domestic operating utility is against public policy of this State unless there is an affirmative finding by the commission that such acquisition is in the public interest."

As previously stated the respondent found that the transfer of the stock in question to the applicant "can have no detrimental effect upon the public interest."

In the case of the Public Service Commission of Missouri v. St. Louis-San Francisco Railway Co., 256 S. W. 226, 301 Mo. 157, l. c. 165, this Court en Banc said:

"The commission is vested with such powers, and only such, as are conferred upon it by the Public Service Commission Law. [Chap. 95, R. S. 1919.] By that law it is vested with the powers therein expressly conferred and all others necessary and proper to enable it to carry out fully and effectually all the purposes of the act. . . .

In conducting the hearings the commission does not sit as a legislative committee for the purpose of formulating a 'public policy' and putting it into effect by the issuance of general rules 'legislative in . . . nature.'"

In the case of State ex rel. W. H. Rutledge and G. F. Snyder v. Public Service Commission, 289 S. W. 785, 316 Mo. 233, l. c. 239, in speaking of the powers of the commission we said: "It has no authority beyond the express and literal terms of the Public Service Commission Act."

Whatever power the respondent has must be warranted by the

letter of law or such clear implication flowing therefrom as is necessary to render the power conferred effective.

The power of the commission to pass upon the validity of a corporation to own more than ten per cent of the stock in a domestic corporation is found in Section 5177, Revised Statutes 1929; the pertinent parts are as follows:

"No . . . corporation of any description, domestic or foreign . . . shall, without the consent of the commission, purchase or acquire, take or hold, more than ten per centum of the total capital stock issued by any railroad corporation or street railroad corporation or other common carrier organized or existing under or by virtue of the laws of this State"

To uphold the appellant's contention we would have to read into this section that the commission cannot approve a sale of stock to a foreign corporation unless the commission affirmatively found that such purchase was in public interest. If the Legislature had such an intention, surely proper words showing such an intention would have been found in the act itself, "and the contrary intent is made conspicuous by their absence. The language actually used is so plain as to leave no room for construction. In such case we should not read into the enactment words not found therein either by express inclusion or by fair implication." [Elsas v. Montgomery Elevator Co., 330 Mo. 596, 604, 50 S. W. (2d) 130.]

This section must be read with the other provisions of the Public Service Commission Act, so that the whole act may be construed to effect the purpose for which it was enacted. The whole purpose of the act is to protect the public. The public served by the utility is interested in the service rendered by the utility and the price charged therefor; investing public is interested in the value and stability of the securities issued by the utility. [State ex rel. Union Electric Light & Power Co. v. Public Service Commission, 333 Mo. 426, 62 S. W. (2d) 742.] In fact the act itself declares this to be the purpose. Section 5251, Revised Statutes 1929, in part reads:

"The provisions of this chapter shall be liberally construed with a view to the public welfare, efficient facilities and *substantial justice between patrons and public utilities.*" (Italics ours.)

In the case of In re Rahn's Estate, 316 Mo. 492, 291 S. W. 120, l. c. 122, we quoted with approval the following definition of "public policy," taken from the case of Gordon v. Gordon's Admrs., 168 Ky. 409, 182 S. W. 220, 221, L. R. A. 1916D, 576, Ann. Cas. 1917D, 886, it is said:

" 'It is probable that a satisfactory or precise definition of public policy has never been given. The courts have, however, frequently approved Lord Brougham's definition of public policy, as the principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare."

In that case on page 123, we also said:

"So it has been held by the appellate courts of our own State that 'the very highest evidence of the public policy of any state is its statutory law,' and, 'if there is legislation on the subject, the public policy of the State must be derived from such legislation.' [Moorshead v. Railways Co., 203 Mo. 121, l. c. 165, 96 S. W. 261, 271; Blanchard Co. v. Hamblin, 162 Mo. App. 242, 251, 144 S. W. 880.] Judge NAPTON speaking for this court, in State v. Clarke, 54 Mo. 17, l. c. 36 (14 Am. Rep. 471), aptly remarked:

" 'It is a naked assumption to say that any matter allowed by the Legislature is against public policy. The best indication of public policy is to be found in the enactment of our Legislature.' "

We conclude that part of the opinion dealing with public policy as follows:

"So it is clearly apparent, from the foregoing decisions, that it is not the function of the judiciary to create or announce a public policy of its own, but solely to determine and declare what is the public policy of the State or nation as such policy is found to be expressed in the Constitution, statutes, and judicial decisions of the State or nation."

The "public policy" of a state is primarily a legislative and not a judicial function, and is to be found in the Constitution and statutes, and that only in the absence of any declaration in these, may it be determined from judicial decisions. [6 R. C. L. 108, 109; 25 R. C. L. 1040-1043.]

To uphold the contention of the appellant we must read words into the section of the statute in question that are not in it; we must assume they were purposely omitted by the Legislature. Under the guise of public policy, we have no right to read into this act words not expressly found therein, or by implication, so that the purpose of the act may be carried out.

The respondents found that the public (consumers) would not be effected by the transfer of the stock. The owners of this stock should have something to say as to whether they can sell it or not. To deny them that right would be to deny to them an incident important to ownership of property. [City of Ottawa v. Public Service Commission, 288 Pac. (Kan.) 556.] A property owner should be allowed to sell his property unless it would be detrimental to the public.

The State of Maryland has an identical statute with ours and the Supreme Court of that State in the case of Electrical Public Utilities Co. v. West, 140 Atl. 840, l. c. 844, the court said:

"To prevent injury to the public, in the clashing of private interest with public good in the operation of public utilities, is one of the most important functions of Public Service Commissions. It is not their province to insist that the public shall be *benefited*, as a condition to change of ownership, but their duty is to see that no such

change shall be made as would work to the public *detriment*. 'In the public interest,' in such cases, can reasonably mean no more than 'not detrimental to the public.' ''

The appellant relies upon our recent case of State ex rel. City of St. Louis v. Public Service Commission, 331 Mo. 1098, 56 S. W. (2d) 398. That case is distinguishable from the case at bar in that the applicant in that case was a foreign corporation doing business in Missouri without a license, and while we believe that the decision in that case was correct, yet we do not believe that we were correct in some of the reasons assigned. We do not agree with that part of the opinion which holds that, before a corporation can purchase more than ten per cent of the stock in a domestic utility, it is incumbent upon the commission to find that the public will be benefited by the transfer. That part of the opinion should be no longer followed.

Our conclusion is that the appellant has not sustained the burden of showing that the order of respondents is unreasonable or unlawful.

The judgment is, therefore, affirmed. All concur, except *Ellison* and *Hays, JJ.*, absent.