STATE ex rel. AG PROCESSING,
INC., Appellant,

v.

PUBLIC SERVICE COMMISSION OF
THE STATE of Missouri and Aquila,
Inc., f/k/a/ UtiliCorp United, Inc., Re-
spondents.

No. SC 85352.

Supreme Court of Missouri,
En Banc.

Oct. 28, 2003.

Stuart W. Conrad, Jeremiah D. Finnegan, Kansas City, for Appellant.

Steven Dottheim, Dana K. Joyce, Paul A. Boudreau, Sondra B. Morgan, Jefferson City, for Respondents.

RONNIE L. WHITE, Chief Justice.

## I.

AG Processing, Inc. ("AGP"), appeals the judgment of the circuit court affirming the decision of the Missouri Public Service Commission ("PSC" or "Commission") approving the merger of UtiliCorp United, Inc. ("UtiliCorp," now renamed Aquila, Inc.) and St. Joseph Light & Power Company ("SJLP").[1] Reversed and remanded.

UtiliCorp and SJLP (collectively "Applicants") entered into a merger agreement and, with shareholder consent, filed a joint application with the PSC seeking approval.[2] The Applicants submitted a five-year regulatory plan providing, *inter alia,* a five-year rate moratorium on rate increases, barring catastrophic circumstances, in return for which the PSC would order no rate decreases during the same five years. The plan also addressed recovery of the $92,000,000 acquisition premium associated with the merger.

The PSC conducted an evidentiary hearing on the proposed merger and regulatory plan. AGP intervened seeking disapproval of the merger or conditional ap-

1. UtiliCorp, a Delaware corporation with its principal office and place of business in Kansas City, Missouri, provides electrical and natural gas utility services in Missouri through its Missouri Public Service (MPS) operating division. SJLP, a Missouri corporation with its principal office and place of business located in St. Joseph, Missouri, provides electricity, natural gas, and industrial steam to a number of industrial customers. AGP, an agricultural cooperative and manufacturer and processor of soy-related and other grain products, is a major purchaser of electricity and industrial steam from SJLP.

2. The agreement provided that SJLP shareholders were to receive a fixed value of $23 per share for their SJLP common stock, which was to be converted into shares of UtiliCorp common stock. The equity that UtiliCorp was required to issue to exchange shares of its stock for SJLP's stock totaled $190,000,000 and, with the SJLP indebtedness assumed by UtiliCorp, brought the total cost of the merger to approximately $270,000,000.

proval assuring that the ratepayers of SJLP would be shielded from any possible detriment and would receive the full benefit of the merger's resulting savings as opposed to having those benefits retained by the surviving corporate entity during the rate moratorium.[3]

In addition to the evidence offered by AGP at the hearing, PSC staff testified that they opposed the merger and recommended its rejection as being against the public interest. Staff members testified that the proposed recovery of the acquisition adjustment would require customers to inappropriately pay for costs properly assignable to the shareholders and that the ratepayers would receive an insignificant portion of total merger savings with the majority of the savings being retained by UtiliCorp.

Other objections raised by the PSC staff and the intervenors included claims that the merger would result in UtiliCorp acquiring an undue and anti-competitive concentration of market power detrimental to ratepayers. It was also asserted that the credit rating of the surviving entity would be the lower triple-B rating of UtiliCorp as opposed to the A rating of SJLP, resulting in higher interest rates on the debt held by the merging corporations, a financial risk for SJLP ratepayers. A further objection concerned Applicants' Exhibit 503, a work-

sheet prepared by the Applicants in response to a data request from AGP, pursuant to 4 CSR 240-2.090(2), asking that UtiliCorp provide a description of the method used for the allocation of the acquisition premium. Exhibit 503's allocation of costs and premiums from the merger projected an annual detriment of $34,000 to SJLP's steam customers and $35,000 to its natural gas customers.

PSC approved the merger, but rejected Utilicorp's proposed regulatory plan. On appeal, the circuit court affirmed, finding the PSC's approval order to be both lawful and reasonable. Transfer was granted after opinion by the Court of Appeals, Western District, Mo. Const. art. V, section 10.[4]

## II.

◼ Pursuant to section 386.510, the appellate standard of review of a PSC order is two-pronged: "first, the reviewing court must determine whether the PSC's order is lawful; and second, the court must determine whether the order is reasonable."[5] The burden of proof is upon the appellant to show that the order or decision of the PSC is unlawful or unreasonable.[6] The lawfulness of a PSC order is determined by whether statutory authority for its issuance exists, and all legal issues are reviewed de novo.[7] An order's

---

3. Other intervenors included the City of Springfield, Missouri, Union Electric Company, d/b/a AmerenUE, and the Missouri Department of Natural Resources.

4. Portions of this opinion follow the legal analysis of Court of Appeals' opinion authored by the Honorable Judge Edwin H. Smith and are incorporated without further attribution.

5. Section 386.510 (all statutory references are to RSMo 2000 unless otherwise noted); *State ex rel. Atmos Energy Corp. v. PSC,* 103 S.W.3d 753, 759 (Mo. banc 2003); *Love 1979 Partners v. Public Service Com'n of Missouri,* 715

S.W.2d 482, 485–486 (Mo. banc 1986). See also Mo. Const. art. 5, section 18; *Union Electric Company v. Clark,* 511 S.W.2d 822, 824–825 (Mo.1974).

6. Section 386.430; *State ex rel. Associated Natural Gas Co. v. Public Service Com'n of State of Mo.,* 37 S.W.3d 287, 292 (Mo.App. 2000); *State ex rel. City of St. Louis v. Public Service Com'n of Missouri,* 335 Mo. 448, 73 S.W.2d 393, 397 (banc 1934).

7. *State ex rel. Alma Telephone Co. v. Public Service Com'n,* 40 S.W.3d 381, 387 (Mo.App. 2001); *Atmos,* 103 S.W.3d at 759.

reasonableness depends on whether it is supported by substantial and competent evidence on the whole record, and the appellate court considers the evidence together with all reasonable supporting inferences in the light most favorable to the Commission's order.[8] The Commission's factual findings are presumptively correct, and if substantial evidence supports either of two conflicting factual conclusions, "the Court is bound by the findings of the administrative tribunal."[9] The procedure provided for judicial review in section 386.510 is exclusive and jurisdictional.[10]

### III.

█ There is no dispute that the Applicants are regulated utilities under chapter 393.[11] Section 393.190.1, requiring the issuance of a merger approval order from the PSC, provides the lawful authority for the PSC's decision.[12] Having found the PSC's decision to be lawful, the Court must examine its reasonableness. Reasonableness turns on the standard used to evaluate a merger subject to approval by the PSC, which is whether or not the merger would be "detrimental to the public."[13]

█ AGP raises three points on appeal in its attempt to establish that the merger is a detriment to the public. AGP claims that the PSC's approval of the merger was not supported by competent and substantial evidence upon the whole record because: (1) when determining that the merger was not detrimental to the public, the PSC rejected the unrefuted and contrary evidence of its own staff and refused to consider the recoupment of the acquisition premium; (2) the PSC impermissibly shifted the burden of proof of section 393.150 from the applicants to the intervenors by failing to require the applicants to prepare and submit a market power study; and (3) the applicant's own evidence established the merger was a public detriment because UtiliCorp's Exhibit 503 demonstrated an annual increased cost allocation of $34,000 to SJLP's steam customers and $35,000 to its natural gas customers, and the merger would result in a drop in SJLP's credit rating, increasing the interest rate on the corporation's debt.

Applicants respond by arguing that the decision to approve the merger was supported by substantial evidence, that all contrary evidence presented at the hearing was refuted, and that the burden of proof did not shift as a result of not having to produce a market power survey.[14] The PSC also maintains that considering recoupment of the $92,000,000 acquisition premium while considering approval of the

8. *Alma,* 40 S.W.3d at 387.

9. *Atmos,* 103 S.W.3d at 759; *Amway Corp. Inc. v. Director of Revenue,* 794 S.W.2d 666, 668 (Mo. banc 1990).

10. *Clark,* 511 S.W.2d at 825.

11. See also sections 386.020(15), (18), and (20).

12. Sections 386.040 & 393.190; *Atmos,* 103 S.W.3d at 756.

13. City of St. Louis, 73 S.W.2d at 400; 4 CSR 240–2.060(7)(D) & (8)(D), effective April 30, 2000 through April 29, 2003; and 4 CSR 240–3.115 effective since April 30, 2003.

14. The reasons cited for the approval included: (1) continued provision of quality day-to-day utility service at reasonable rates; (2) strengthening of the competitive position and financial condition of the combined entity would support an investment grade bond rating; (3) expanded asset base, increased revenues and improved cash flows would increase access to capital markets on more reasonable terms; and (4) the merger would result in significant synergies from generation, economies of scale, and efficiencies realized from the elimination of duplicate corporate and administrative services, ultimately resulting in lower operational costs translating into lower rates for utility service.

merger amounts to prejudging a ratemaking factor outside a ratemaking case.

The fact that the acquisition premium recoupment issue could be addressed in a subsequent ratemaking case did not relieve the PSC of the duty of deciding it as a relevant and critical issue when ruling on the proposed merger. While PSC may be unable to speculate about future merger-related rate increases, it can determine whether the acquisition premium was reasonable, and it should have considered it as part of the cost analysis when evaluating whether the proposed merger would be detrimental to the public.[15] The PSC's refusal to consider this issue in conjunction with the other issues raised by the PSC staff may have substantially impacted the weight of the evidence evaluated to approve the merger.[16] The PSC erred when determining whether to approve the merger because it failed to consider and decide all the necessary and essential issues, primarily the issue of UtiliCorp's being allowed to recoup the acquisition premium.

 With regard to AGP's second point, burden shifting in relation to producing a market power study, the burden of proof outlined in section 393.150.2 as cited by AGP pertains to ratemaking cases and not mergers. In proper context, it is

AGP's burden as the appellant to show on appeal that the PSC erred by failing to order the Applicants to submit a market power study as part of their application for approval of the merger.[17] In support of its claim that the Applicants were required to submit a market power study, AGP cites several prior PSC decisions in which the PSC required merger applicants to file market power studies. However, an administrative agency is not bound by *stare decisis*, nor are PSC decisions binding precedent on this Court.[18] AGP fails in its burden to show by clear and satisfactory evidence that Applicants were required to submit a market power study.[19]

AGP's final allegation of public detriment from the merger involves UtiliCorp's Exhibit 503, which according to AGP establishes detrimental cost allocations to SJLP's steam and natural gas customers. Additionally, AGP claims the merger will lower SJLP's credit rating resulting in higher interest rates on debt, raising costs for the ratepayers. With regard to the first part of this point, the cost allocations in question were dependent on the rejected five-year regulatory plan, and, consequently, this claim is without merit.

---

**15.** See *State ex rel. Martigney Creek Sewer Co. v. Pub. Serv. Comm'n,* 537 S.W.2d 388, 399 (Mo. banc 1976) (stating that, for ratemaking purposes, recovery of the cost of an asset acquired from another utility depends on the reasonableness of the acquisition, considering the factors of whether the transaction was at arm's length, if it resulted in operating efficiencies, and if it made possible a desirable integration of facilities).

**16.** PSC staff had also testified that their analysis of the merger demonstrated that the expected rate impact on SJLP and MPS customers would be negative. Merger costs potentially assignable to the ratepayers included transaction costs, transition costs and administrative costs. Ninety-three percent of the projected merger savings could

have been achieved on a "stand alone" basis without the merger, and there was no plan to assign these savings to the customers. Projected merger savings were, in fact, illusory and PSC staff calculated costs exceeding savings by $68.9 million during the ten-year period following the merger.

**17.** See footnote 6.

**18.** *State ex rel. GTE N. Inc. v. Mo. Pub. Serv. Comm'n,* 835 S.W.2d 356, 371 (Mo.App. 1992); *Cent Hardware Co., Inc. v. Dir. of Revenue,* 887 S.W.2d 593, 596 (Mo. banc 1994).

**19.** Section 386.430; *State ex rel. Midwest Gas Users' Ass'n v. Public Service Com'n of State,* 976 S.W.2d 485, 492 (Mo.App.1998).

Addressing the second part of this point, UtiliCorp's credit rating of BBB, while lower than SJLP's current rating, is still considered to be investment grade. No evidence was presented that would quantify how the cost of debt attributable to SJLP would increase, and even if it is assumed that the merger will increase the cost of debt for SJLP's ratepayers, that fact alone does not require the Commission to reject the merger. The risk of an increased cost of debt is just one factor for the Commission to weigh when deciding whether or not to approve the merger, and based on the evidence in the record, the PSC's findings and conclusions were not unreasonable concerning this issue.

### IV.

The judgment is reversed, and the case is remanded. The circuit court shall remand the case to the PSC to consider and decide the issue of recoupment of the acquisition premium in conjunction with the other issues raised by PSC staff and the intervenors in making its determination of whether the merger is detrimental to the public. Upon remand the Commission will have the opportunity to reconsider the totality of all of the necessary evidence to evaluate the reasonableness of a decision to approve a merger between UtiliCorp and SJLP.

WOLFF, BENTON, STITH, TEITELMAN and LIMBAUGH, JJ., and DRAPER, Sp.J., concur.

PRICE, J., not participating.