In the
 Missouri Court of Appeals
 Western District
IN THE MATTER OF THE )
PETITION OF MISSOURI- )
AMERICAN WATER COMPANY ) WD83924
FOR APPROVAL TO CHANGE AN )
INFRASTRUCTURE SYSTEM ) OPINION FILED: May 11, 2021
REPLACEMENT SURCHARGES; )
 )
MISSOURI-AMERICAN WATER )
COMPANY AND MISSOURI PUBLIC )
SERVICE COMMISSION, )
 )
 Respondents, )
 )
v. )
 )
OFFICE OF THE PUBLIC COUNSEL, )
 )
 Appellant. )

 Appeal from the Public Service Commission

 Before Division Three: Thomas H. Newton, Presiding Judge, Gary D. Witt, Judge and
 W. Douglas Thomson, Judge

 The Office of Public Counsel ("Public Counsel") appeals the order of the Public

Service Commission ("Commission") holding that Missouri-American Water Company

("Missouri-American") could raise the rates charged through its Infrastructure System

Replacement Surcharge ("ISRS"). Public Counsel argues the Commission's Order is
unlawful in that the Commission misinterpreted an advisory opinion issued by the

Internal Revenue Service ("IRS") and misapplied governing statutes. We reverse and

remand.

 Factual and Procedural Background1

 Missouri-American is a "public utility" and a "water corporation" pursuant to

section 386.020.2 Missouri-American is a subsidiary of American Water Works and, as

relevant to this appeal, Missouri-American provides water service in St. Louis County.

 [A]n approved ISRS can be collected only for three years at the most, at
 which point it then terminates (unless a new rate case is pending).
 Thereafter, the [utility] has to file revised rate schedules to reset the ISRS to
 zero upon resolution of a general rate case. [Section 393.1006.6(1)]. The
 [utility] may then seek to establish a new ISRS by filing a petition pursuant
 to section [393.1003]. Collectively, the ISRS statutes permit the [utility] to
 make single-issue rate increases between general rate cases in order to
 timely recover its costs for certain government-mandated infrastructure
 projects without the time and expense required to prepare and file a general
 rate case, while, at the same time, limiting the collection of the ISRS
 surcharge to three years to prevent its unlimited use outside of a general
 rate case.

Mo.-Am. Water Co. v. Mo. Pub. Serv. Comm'n (Missouri-American II), 602 S.W.3d 252,

254 (Mo. App. W.D. 2020). Missouri-American has petitioned for four changes to its

ISRS since its last general rate case, which became effective in May 2018. Mo.-Am.

Water Co. v. Pub. Serv. Comm'n (Missouri-American I), 591 S.W.3d 465, 468 (Mo. App.

W.D. 2019). In the instant case and in three previous ISRS cases, Missouri-American has

utilized the same method for calculating its net operating loss ("NOL"). The Commission

 1
 We presume the Commission's factual findings are correct and consider the evidence and all reasonable
supporting inferences in the light most favorable to the Commission's order. State ex rel. AG Processing, Inc. v.
Pub. Serv. Comm'n of State, 120 S.W.3d 732, 735 (Mo. banc 2003).
 2
 All statutory references are to the Revised Statutes of Missouri (2016), as currently updated unless
otherwise indicated.

 2
described Missouri-American's theory of its NOL as "the accelerated depreciation

expense of the new infrastructure subtracted from zero new revenues on that

infrastructure, [which] produces a loss on the new infrastructure up until the time the new

ISRS rates are effective."

 In two previous cases, the Commission denied Missouri-American's petitions to

increase Missouri-American's ISRS rates utilizing those calculations and rejected that

theory, and this Court affirmed. Missouri-American I, 591 S.W.3d at 477; Missouri-

American II, 602 S.W.3d at 262. A third ISRS case was disposed by a settlement

agreement. However, in the instant case, the Commission's Report and Order ("Order")

changed Missouri-American's ISRS allowing Missouri-American to raise its rates. We

discuss each of these previous cases to provide the relevant context necessary to address

the issues before us on appeal.

 Missouri-American I

 On August 20, 2018, Missouri-American filed a petition to establish an ISRS with

the Commission, requesting an ISRS for St. Louis County to recover costs incurred for

infrastructure system replacements made during the period from January 1, 2018, through

September 30, 2018. Missouri-American I, 591 S.W.3d at 468. The Commission

concluded that "[a]n NOL results when a utility does not have enough taxable income to

utilize all of the tax deductions to which it would otherwise be entitled." Id. The

Commission found that because Missouri-American would have taxable income in 2018,

Missouri-American would not generate an NOL during the 2018 ISRS period at issue.

Id. at 469. Missouri-American asserted that an NOL was associated with the subject

 3
ISRS investments on an aggregate basis. Id. at 470. The Commission rejected Missouri-

American's NOL theory holding that: "In short, although the ISRS statute requires

recognition of [accumulated deferred income taxes ("ADIT")], which might include

reflection of an NOL, we cannot allow [Missouri-American] to reduce its ADIT balance

to reflect an NOL that does not exist." Id. at 469. We affirmed the Commission's

decision holding that "[b]ecause [Missouri-American's] calculations regarding alleged

NOLs associated with the specific plant improvements were hypothetical, we cannot

agree that the Commission's reliance on actual data from [Missouri-American] which

reflects that [Missouri-American] as a whole, with the specific plant improvements

incorporated into that data, accumulated no NOL during the relevant time period was in

error." Id. at 477.

 Missouri-American II

 On February 20, 2019, Missouri-American filed a second petition to change its

ISRS to recover costs incurred with infrastructure system replacements made from

October 1, 2018, to March 31, 2019 within St. Louis County. Missouri-American II, 602

S.W.3d at 255. In calculating its NOL, Missouri-American utilized the same method as it

did in Missouri-American I, "by subtracting expenditures during the ISRS period for

eligible infrastructure replacements and improvements (including related accelerated

depreciation) from zero ISRS revenue it would be collecting from these eligible

expenditures during the ISRS period." Id. Missouri-American theorized that the ISRS

expenditures would not generate new revenue until after the ISRS period because that

infrastructure had not been in place during the ISRS period. Id. at 255, n.3. The

 4
Commission held that because Missouri-American was expected to have taxable income

in 2018 and 2019, Missouri-American would not generate an NOL during the ISRS

period. Id. at 257. We affirmed the Commission's decision holding that subtracting

expenditures that will be incurred for eligible infrastructure replacements from zero

revenue that will be generated from these expenditures during the ISRS period was

expressly rejected in Missouri-American I. Id. at 259-60.

 Third ISRS Case

 Missouri-American filed a third Petition to Change its ISRS to recover eligible

costs incurred with infrastructure system replacements made from October 1, 2019 and

March 31, 2020. Instead of litigating the issue, Missouri-American entered into a partial

settlement agreement with the Commission's Staff ("Staff"), which provided:

 If the IRS [Private Letter Ruling] indicates that the Commission's treatment
 of the Deferred Tax Asset (NOL) has created a normalization violation,
 [Missouri-American] will file an application for an Accounting Authority
 Order (AAO), and Staff and [Public Counsel] agree to support such AAO
 application, to permit [Missouri-American] to record a regulatory asset to
 capture the rate differential in an amount as may be necessary to cure such
 normalization violation, if any, identified by the [Private Letter Ruling].

Public Counsel was not a signatory to the settlement agreement, but Public Counsel did

not object to the settlement agreement. The Commission entered an order approving the

partial settlement agreement on November 21, 2019.

 5
 Private Letter Ruling

 After the Commission denied Missouri-American's first Petition to Change its

ISRS rate, Missouri-American requested that the IRS provide a private letter ruling3 on

June 5, 2019. Missouri-American supplemented its request on June 6, 2019. In its

request, Missouri-American sought twelve rulings. The IRS described the key issue as

"whether the tax effect of an [NOL Carryforward] must, pursuant to the normalization

requirements, decrease the ADIT reduction to rate base related to the expenditures in the

[first ISRS case] and, if so, the methodology to determine the amount of the [NOL

Carryforward adjustment] subject to the normalization requirements."

 On December 3, 2019, the IRS issued a private letter ruling, PLR-113227-19,

("Ruling"). Only Rulings 5 and 9 are relevant to this appeal. Ruling 5 provided that:

 The ADIT resulting from expenditures (1) related to an item of property
 includible in rate base and recoverable as regulatory depreciation expense
 in the determination of the revenue requirement set in the [first ISRS case]
 and (2) deducted as repairs under [26 U.S.C.] § 162 to public utility
 property within the meaning of [26 U.S.C.] § 168(i)(10), or a predecessor
 provision of the normalization requirements, pursuant to the tax method of
 accounting for repairs permitted in [Missouri-American's] Consent
 Agreement, is not subject to the normalization method of accounting within
 the meaning of [26 U.S.C.] §168(i)(9) or, as applicable, a predecessor
 statutory provision.

And, Ruling 9 provided that:

 Under the circumstances described, in order to comply with the
 normalization method of accounting within the meaning of [26 U.S.C. §
 168(i)(9)], the amount of depreciation-related ADIT reducing rate base
 used to determine the revenue requirement set in the [first ISRS case] must
 be decreased to reflect a portion of the NOL for the test period for the [first
 3
 Private letter rulings are advisory opinions that "represent the IRS's individual response to a particularized
inquiry from a specific taxpayer, and, as such, have no precedential value." Florida Power & Light Co. v. United
States, 56 Fed. Cl. 328, 334 (2003) (citing 26 U.S.C. § 6110(k)(3); Treas. Reg. § 601.201(l)(6)).

 6
 ISRS case] which would not have arisen had [Missouri-American] not
 reported depreciation-related book/tax differences during the te[s]t[4] period
 for the [first ISRS case] and such decrease in depreciation-related ADIT
 must be an amount that is no less than the amount computed using the
 With-and-Without Method.[5]

 Instant Case (Fourth ISRS Case)

 After receiving the Ruling, Missouri-American filed a fourth Petition to Change its

ISRS ("Petition") to recover costs incurred with infrastructure system replacements made

from October 1, 2019 through March 31, 2020. The Petition also sought changes to

Missouri-American's ISRS rate to cure alleged normalization violations that occurred in

the three previous ISRS cases. On May 1, 2020, Staff filed its recommendation and

memorandum agreeing with Missouri-American's calculations and recommending the

Commission approve Missouri-American's requested rate changes including an

adjustment of $35,328 to cure normalization violations which allegedly occurred in the

three previous ISRS cases. On May 11, 2020, Missouri-American filed a response

agreeing with Staff's recommendation. That same day, Public Counsel filed its

objections and a request for an evidentiary hearing.

 The Commission conducted an evidentiary hearing on June 3, 2020, admitting the

testimony of six witnesses and thirteen exhibits into evidence. Each party filed post-

 4
 In the original private letter ruling, Ruling 9 referred to a "text period," but the Commission inferred that
this language was a mistake and that Ruling 9 intended to refer to a "test period."
 5
 The Commission defined the "With-and-Without Method" as "the difference between straight line
depreciation used for rates and accelerated depreciation used for income tax reporting and multiplies this amount by
the income tax rate to determine the NOL." The Commission's definition of the With-and-Without Method is not
challenged on appeal, and the parties do not dispute whether the With-and-Without Method is the appropriate
method in this context.

 7
hearing briefs on June 8, 2020. The Commission entered its Order on June 17, 2020,

which became effective on June 27, 2020.

 In its Order, the Commission found that "[Missouri-American's] theory of its NOL

is the accelerated depreciation expense of the new infrastructure subtracted from zero

new revenues on that infrastructure, produces a loss on the new infrastructure up until the

time the new ISRS rates are effective." In the previous ISRS cases, the Commission's

orders were "based on its long-term understanding, and Internal Revenue Code definition,

that the phrase 'net operating loss' referred to year-end tax calculations, and any such loss

would not be project specific." However, in the instant case, the Commission found that

Ruling 9 used the term NOL to refer to a specific time period and a specific project.

Specifically, it found that "[t]he IRS agreed with [Missouri-American's] NOL theory that

the NOL amount applicable to ISRS plant additions should be determined using the so-

called '[W]ith-and-[W]ithout' [M]ethod."

 Relying on Ruling 5, the Commission held that Missouri-American's repairs to

plant were not subject to normalization accounting and thus should not be included in the

NOL calculations as an offset to ADIT.6 However, the Commission held that Ruling 9

permitted all other plant additions to be included in the NOL calculation as an offset to

ADIT utilizing the With-and-Without Method.

 The Commission authorized Missouri-American to change its ISRS to recover

$9,725,687, which included $35,328 to cure normalization violations it found occurred in

 6
 The Commission's application of Ruling 5 is not challenged on appeal, and therefore, we will not address
that issue.

 8
the three previous ISRS cases. On June 17, 2020, Missouri-American filed a tariff, No.

YW-2020-0216 ("Tariff"). The Tariff provided for the following ISRS:

 Customer Rate Class Rate per 100 gallons Rate per 1,000 gallons
 Rate A $0.09629 $0.96287
 Rate B $0.00146 $0.01463
 Rate J $0.00140 $0.01399

The Commission approved the Tariff, and made it effective on June 30, 2020. Public

Counsel filed a timely application for rehearing, which the Commission denied. This

appeal timely followed.

 Standard of Review

 Pursuant to section 386.510, our standard of review of the Commission's order is

two-pronged: first, we must determine whether the order is lawful, and then we must

determine whether the order is reasonable. State ex rel. AG Processing, Inc. v. Pub. Serv.

Comm'n of State, 120 S.W.3d 732, 734 (Mo. banc 2003). The burden of proof is on the

appellant to show the Commission's order is unlawful or unreasonable. Id. "The

lawfulness of [the Commission's] order is determined by whether statutory authority for

its issuance exists, and all legal issues are reviewed de novo." Id. "An order's

reasonableness depends on whether it is supported by substantial and competent evidence

on the whole record, and the appellate court considers the evidence together with all

reasonable supporting inferences in the light most favorable to the Commission's order."

Id. at 734-35. We presume the Commission's factual findings are correct, "and if

substantial evidence supports either of two conflicting factual conclusions, the Court is

 9
bound by the findings of the administrative tribunal." Id. at 735. (internal quotations

omitted).

 Discussion

 Public Counsel raises four points on appeal. First, Public Counsel asserts the

Commission erred in setting the rates Missouri-American was permitted to recover

through its ISRS because the Commission calculated an NOL offsetting ADIT incurred

by Missouri-American for each ISRS period in a manner that is inconsistent with

governing statutes. Second, it argues the Commission erred in setting rates Missouri-

American was permitted to recover through its ISRS because there is insufficient

evidence to prove the existence of the NOL used to offset ADIT for each ISRS case

involved. Third, Public Counsel alleges the Commission erred in setting the rates

Missouri-American was permitted to recover through its ISRS because the Commission

unlawfully permitted Missouri-American to collaterally attack the Commission's prior

decisions as well as the Opinions issued by this Court in that the Commission allowed an

adjustment predicated on facts that contradicted its own prior holdings. Fourth, it asserts

the Commission erred in setting the rates Missouri-American was permitted to recover

through its ISRS because the Commission's calculations of Missouri-American's NOL for

each ISRS case is against the weight of the evidence. Because Public Counsel's first

point is dispositive, we only address that argument.

 Point One

 In its first point, Public Counsel asserts the Commission erred in setting the rates

Missouri-American was permitted to recover through its ISRS because the Commission

 10
calculated an NOL offsetting ADIT incurred by Missouri-American during the ISRS

period for each ISRS period in a manner that is inconsistent with the Internal Revenue

Code,7 and thus, the Order is unlawful. We agree.

 ISRS cases stemming from improvements made in St. Louis County are governed

by sections 393.1000 through 393.1006. Missouri-American II, 602 S.W.3d at 258.

Pursuant to section 393.1006.2(4), "the [C]ommission shall enter an order authorizing the

water corporation to impose an ISRS that is sufficient to recover appropriate pretax

revenues . . . ." "Appropriate pretax revenues" include "recognition of accumulated

deferred income taxes and accumulated depreciation associated with eligible

infrastructure system replacements which are included in a currently effective ISRS[.]"

Section 393.1000(1)(a). Public Counsel and Missouri-American dispute the

Commission's application of Ruling 9 and whether Missouri-American's NOL

calculations entitle Missouri-American to an offset of ADIT during the ISRS period.

 The "primary rule of statutory interpretation is to give effect to the legislative

intent as reflected in the plain language of the statute at issue." Truman Med. Ctr., Inc. v.

Progressive Cas. Ins. Co., 597 S.W.3d 362, 367 (Mo. App. W.D. 2020). We review legal

issues de novo. State ex rel. AG Processing, Inc., 120 S.W.3d at 734. In general, we

defer to an agency's judgment on issues within the realm of the agency's expertise. State

ex rel. Sprint Mo., Inc. v. Pub. Serv. Comm'n of State, 165 S.W.3d 160, 164 (Mo. banc

2005). In the instant case, we defer to the IRS's expertise in interpreting the Internal

Revenue Code, however, we do not defer to the Commission's interpretation of the IRS's

 7
 The Internal Revenue Code is contained within Title 26 of the United States Code (2018).

 11
Ruling because interpreting the Internal Revenue Code does not fall within the

Commission's regulatory authority or expertise.

 Ruling 9 provided that:

 Under the circumstances described, in order to comply with the
 normalization method of accounting within the meaning of [26 U.S.C. §
 168(i)(9)], the amount of depreciation-related ADIT reducing rate base
 used to determine the revenue requirement set in the [first ISRS case] must
 be decreased to reflect a portion of the NOL for the test period for the [first
 ISRS case] which would not have arisen had [Missouri-American] not
 reported depreciation-related book/tax differences during the te[s]t period
 for the [first ISRS case] and such decrease in depreciation-related ADIT
 must be an amount that is no less than the amount computed using the
 With-and-Without Method.

Public Counsel argues the Commission's application of Ruling 9 is inconsistent with the

Internal Revenue Code's definition of "net operating loss," which is "the excess of the

deductions allowed by this chapter over the gross income." 26 U.S.C. § 172(c). "[G]ross

income" is defined as "all income from whatever source derived." 26 U.S.C. § 61.

Therefore, we must conclude the statutory definition of "net operating loss" is the excess

of the deductions allowed by chapter one of the Internal Revenue Code over all of a

taxpayer's income from whatever source derived. The Commission interpreted Ruling 9

to mean that "NOL is the accelerated depreciation expense of the new infrastructure

subtracted from zero revenues on that infrastructure. . . ." (emphasis added). Neither

Missouri-American nor the Commission provide any support for this definition, and their

interpretation is inconsistent with the statutory definition, which requires that NOL

calculations include "all income from whatever source derived."

 12
 Furthermore, Public Counsel argues the Commission's interpretation ignores the

plain language contained within Ruling 9, which provides in relevant part that ADIT

"must be decreased to reflect a portion of the NOL for the test period for the [first ISRS

case]." Public Counsel argues that the Commission interpreted this language as: "to

reflect a portion of the NOL [that arose during] the test period for the [first ISRS case]."

Public Counsel asserts that the proper interpretation of this language is: "to reflect a

portion of [Missouri-American's total] NOL [attributable to] the test period for the [first

ISRS case]." In essence, the Commission's interpretation of Ruling 9 would always result

in an NOL because any time a public utility makes an infrastructure replacement that

replacement cost would always be subtracted from zero revenue until the ISRS is

changed. This interpretation ignores the phrase "portion of" contained within Ruling 9.

To reconcile this phrase with the statutory definition provided in the Internal Revenue

Code, Ruling 9 must be interpreted as:

 Under the circumstances described, in order to comply with the
 normalization method of accounting within the meaning of [26 U.S.C. §
 168(i)(9)], the amount of depreciation-related ADIT reducing rate base
 used to determine the revenue requirement set in the [first ISRS case] must
 be decreased to reflect that portion of the NOL, which is the excess of the
 deductions allowed by chapter one of the Internal Revenue Code over
 all of a taxpayer's income from whatever source derived, attributable
 to the test period for the [first ISRS case] which would not have arisen had
 [Missouri-American] not reported depreciation-related book/tax differences
 during the te[s]t period for the [first ISRS case] and such decrease in
 depreciation-related ADIT must be an amount that is no less than the
 amount computed using the With-and-Without Method.

(words in bold added by the author). This interpretation is consistent with this Court's

previous opinions in Missouri-American I and Missouri-American II, where we expressly

 13
rejected Missouri-American's method of calculating its NOL during the relevant ISRS

periods. Missouri-American has failed to establish an actual NOL stemming from its

operations contained within Missouri.8 Furthermore, Missouri-American continues to

argue that it should be entitled to claim a fictitious or hypothetical NOL that may or may

not actually materialize, which conflicts with our previous opinions in Missouri-

American I and Missouri-American II.

 Additionally, Public Counsel argues that the Commission's reliance on the private

letter ruling was misplaced because the IRS was not fully apprised of all of the relevant

facts. Specifically, Public Counsel asserts that Missouri-American incorrectly claimed it

had a "taxable loss" due to the first ISRS case. However, on this issue we must defer to

the Commission's factual findings. State ex rel. AG Processing, Inc., 120 S.W.3d at 734-

35. The Commission expressly found that "[t]he IRS was made aware that [Missouri-

American] had taxable income in 2018."

 Because the Commission misinterpreted Ruling 9 in calculating Missouri-

American's NOL from zero revenue rather than Missouri-American's actual gross

revenue, its Order is inconsistent with the Internal Revenue Code and the section

393.1000(1)(a) definition of "accumulated deferred income tax." Therefore, its Order is

unlawful. Point One is granted.

 8
 Missouri-American is a subsidiary of American Water Works. Missouri-American I, 591 S.W.3d at 467.
It is irrelevant whether American Water Works has an NOL in determining whether its subsidiary, Missouri-
American has an NOL, because the ISRS statutes contained within section 393.1000-393.1006 are designed to
establish rate schedules addressing NOLs incurred from projects associated with Missouri-American's operations in
St. Louis County. Therefore, it is inappropriate to use Missouri's statutory ISRS mechanism to raise rates on
Missouri customers to alleviate American Water Works's NOL for projects contained within other jurisdictions
when Missouri-American is generating taxable revenue during the relevant period.

 14
 Conclusion

 Because we find the Order was unlawfully entered, we remand to the Commission.

However, the Commission argues that because Missouri-American has filed a petition for

a new general rate case, the Commission can incorporate any necessary reconciliation in

the general rate case rather than do so separately pursuant to section 386.520. Section

386.520.2(2) provides in relevant part:

 If the effect of the unlawful or unreasonable commission decision issued on
 or after July 1, 2011, was to increase the public utility's rates and charges in
 excess of what the public utility would have received had the commission
 not erred . . . then the commission shall be instructed on remand to approve
 temporary rate adjustments designed to flow through to the public utility's
 then-existing customers the excess amounts that were collected by the
 utility plus interest at the higher of the prime bank lending rate minus two
 percentage points or zero.

(emphasis added). In this context, the word "shall" "unambiguously indicates a command

or mandate." Frye v. Levy, 440 S.W.3d 405, 408 (Mo. banc 2014). Because section

386.520.2(2) mandates that this Court issue a specific instruction, we lack discretion to

grant relief other than what is contained within that section. Therefore, we reverse the

Order, and instruct the Commission to approve temporary rate adjustments in accordance

with section 386.520.2(2) and consistent with this opinion.

 Gary D. Witt, Judge

All concur

 15