

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00276-CV
_____

**IN THE INTEREST OF E.R., P.R., JR., S.R., AND S.R., CHILDREN**

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. 2019-538,086; Honorable Kelly Tesch, Presiding

February 2, 2021

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, P.R., appeals from the trial court's order terminating his parental rights to his four children, E.R., P.R., Jr., S.R., and S.R.[1]  In pursuit of his appeal, P.R. presents five issues challenging the trial court's order.  By his first issue, he maintains the evidence is legally insufficient to show he knowingly placed or knowingly allowed his children to remain in conditions or surroundings which endangered their physical or emotion well-

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020).  *See also* TEX. R. APP. P. 9.8(b).

being.  By issue two, he contends he did not engage in conduct or knowingly place his children with persons who engaged in conduct which endangered their physical or emotional well-being.  By his third issue, he challenges the trial court's finding that he constructively abandoned his children or demonstrated an inability to provide them with a safe environment.  By his fourth issue, he contests the evidence supporting a finding that he failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain the return of his children, and by his fifth and final issue, he contests the trial court's finding that termination is in his children's best interests.[2]  We affirm.

BACKGROUND

Appellee, the Texas Department of Family and Protective Services, received a report of neglectful supervision of the four children in December 2019.  According to the record, the family had been residing with the children's paternal grandfather.  When the grandfather passed away, the family was faced with eviction due to non-payment of rent.  Electricity to the home had been disconnected due to non-payment.  In addition, the refrigerator, stove, beds, and other furniture in the home had been sold and there was no food in the house.  The children's mother also reported that there was no heat in the home due to the lack of electricity.

In addition to the children's living environment, the Department was also concerned with drug use by both parents, specifically an allegation that the mother used drugs in the children's presence.  After the children were picked up by the Department,

[2] The mother's parental rights were also terminated; however, she did not appeal.

2

all four tested positive for cocaine. According to a Department investigator, the parents confirmed the allegations of their living conditions but would not confirm reports of drug use. P.R. offered to take a drug screen but postponed his drug screen due to scheduling issues with his employment. Thereafter, he did not show for at least four scheduled drug screens. At first, the children's mother did not want to submit for drug screening. Eventually she did and she tested positive for crack cocaine. She told the investigator she had used crack cocaine to cope with the death of her father. She also admitted to using marihuana.

The Department investigator interviewed two of the four children. They indicated that P.R. used drugs but not around them. They also reported that because the home did not have a stove or electricity, they ate mostly take-out food.

The parents provided the Department with several names as potential placements for the children. After home studies were conducted, all potential placements were ruled out as viable placements. After the Department removed the children from the parents, the youngest child was placed in a foster home and the three older children were placed at Boys Ranch.

At one point during the proceedings, P.R. was employed at a fast-food chain. Despite this employment, the caseworker remained concerned that the parents were unable to pay their bills. With the children in foster care, the parents began living in motels. They both committed theft to help pay for their accommodations and both were eventually arrested. The record does not provide details on the disposition of those arrests.

3

The final hearing on the Department's petition for termination was held virtually via Zoom. Neither parent appeared for the hearing. The caseworker advised the trial court that she had provided the parents with a link for the Zoom hearing. The trial court noted that P.R. was represented by counsel and proceeded with the hearing.[3] The sole witness for the Department was the assigned caseworker.

According to the caseworker, at the outset, the Department's primary goal was family reunification by addressing the parents' drug use and establishing a safe and stable home environment for the children. During her testimony, numerous exhibits were admitted into evidence, including family service plans and an order for actions necessary for the parents to obtain the return of their children. However, her testimony established that the parents failed to follow most of the requirements of the plans and the order, and eventually, the Department's goal changed from family reunification to termination and unrelated adoption.

Through her testimony, the caseworker confirmed that the Department's concern for the children was the parents' drug use. P.R. used drugs and he was aware that the children's mother had used drugs in the children's presence. According to the caseworker, the family was facing eviction with no plan as to where to live or how to provide a stable home for the children.

The caseworker testified that the youngest child was in the care of a foster parent who was willing to adopt her. The three older children were at Boys Ranch. All the

---

[3] P.R.'s counsel advised the trial court that he had not had any contact from his client since a hearing held a few days earlier.

children were doing well in their placements. The goal for the three older children was also unrelated adoption; however, they could remain at Boys Ranch long-term if needed. The Department's goal included finding the children a stable, drug-free environment that would meet all their basic needs. The caseworker answered affirmatively when asked if the children's best interests would be served by terminating the rights of the parents.

At the conclusion of the hearing, the trial court found that P.R.: (1) knowingly placed or knowingly allowed his children to remain in conditions which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; (3) constructively abandoned the children who had been placed in the conservatorship of the Department for not less than six months; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of his children. The trial court also found that termination of P.R.'s parental rights was in his children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (D), (E), (N), and (O), (b)(2) (West Supp. 2020). P.R. challenges only the legal sufficiency of the trial court's findings.

### APPLICABLE LAW

The Texas Family Code permits a court to terminate the relationship between a parent and a child if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) of the Code and that termination of that relationship is in the best interest of the child. *See* § 161.001(b)(1), (2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. § 161.206(a) (West Supp. 2020). "'Clear and convincing evidence' means the

5

measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019).

### STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child are not sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency

6

review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

### SECTION 161.001(b)(1)(D)

The parent-child relationship may be terminated under subsection (D) if the court finds by clear and convincing evidence that a parent has knowingly placed or knowingly allowed a child to remain in conditions or surroundings which endanger the child's physical or emotional well-being. Subsection (D) concerns the child's living environment rather than the conduct of the parent, although a parent's conduct is certainly relevant to the child's environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The relevant time frame under subsection (D) is prior to a child's removal. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied). Additionally, a parent's continued drug use subjects a child to a life of uncertainty and instability which endangers that child's physical or emotional well-being. *In re D.B.*, No. 07-20-00186-CV, 2020 Tex. App. LEXIS 9711, at *12-13 (Tex. App.—Amarillo Dec. 10, 2020, no pet.) (mem. op.) (citing *In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied)).

Appellant's first issue challenges the trial court's finding that he knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. Through the testimony of the caseworker, the Department established that the children were living in a home where the electricity had been terminated due to non-payment. The home was also without adequate furnishings or heat. Additionally, after the children's paternal grandfather

passed away, the family was facing eviction due to non-payment of rent. The mother's continued use of drugs in the children's presence, as well as the father's continued drug use, may be considered as relevant to the children's living environment. Based on these facts, we conclude the Department established that termination of P.R.'s parental rights under subsection 161.001(b)(1)(D) is supported by clear and convincing evidence. Issue one is overruled.

Ordinarily, only one statutory ground is required to support termination. *See In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.). However, in light of *In re N.G.*, 577 S.W.3d 230, 235-37 (Tex. 2019) (per curiam), due process necessitates that we also review the trial court's finding that termination was supported under section 161.001(b)(1)(E).

*In re N.G.* instructs appellate courts to review both subsections (D) and (E) when raised on appeal because of the potential consequences to a parent's rights in a future proceeding concerning a different child. *Id.* There, the Supreme Court held that because section 161.001(b)(1)(M) provides for termination of parental rights if there is clear and convincing evidence that the parent has had his or her parental rights terminated with respect to another child based on a finding under subsection (D) or (E), an appellate court denies an appellant a "meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children" if that court does not review termination based on either those subsections. *Id.* An appellate court is required to provide details of its analysis under those subsections. *In re L.G.*, 596 S.W.3d 778, 781 (Tex. 2020) (concluding the court of appeals erred in failing to detail its analysis

8

of the challenged findings under subsections (D) and (E) after affirming termination on another subsection) (citing *In re Z.M.M.*, 577 S.W.3d 541, 543 (Tex. 2019)).

SECTION 161.001(b)(1)(E)

By issue two, P.R. challenges the finding that he engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being. Under subsection (E), the relevant inquiry is whether there is sufficient evidence that the endangerment was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d at 125; *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 395 (Tex. App.— El Paso 2000, pet. denied). Additionally, subsection (E) requires a conscious course of conduct rather than a single act or omission. *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.— Fort Worth 2000, pet. denied).

Endanger means to expose to loss or injury; to jeopardize. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (citing *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *See In re M.C.*, 917 S.W.2d at 269. *See also In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.).

Drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re R.W.*, 120 S.W.3d 732, 738-39 (Tex. App.—Fort Worth 2004, pet. denied). However, evidence of drug use on its own is not sufficient to show endangerment unless it is causally connected to conduct endangering a child. *In re L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).

9

P.R. admitted to using drugs and the evidence showed that he was aware that the children's mother used drugs in the children's presence. Throughout the proceedings, the parents remained a couple and resided together. Their drug use was a continuing course of conduct. P.R. failed to show for at least four drug tests. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (noting that a fact finder may infer from a parent's repeated failure to show for drug screens that the parent is avoiding testing due to drug use). *See also In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (finding that a parent's drug use and its effect on his or her ability to parent may qualify as an endangering course of conduct). The evidence showed that all four children tested positive for crack cocaine—a fact that endangered their physical well-being. P.R. failed to act to protect his children from the mother's drug use in their presence. Issue two is overruled.

Having found clear and convincing evidence to support termination under subsections (D) and (E), as required by *In re N.G.*, we need not address termination under subsections (N) and (O). P.R.'s third and fourth issues are pretermitted.

### BEST INTEREST FINDING

By his fifth issue, P.R. maintains the Department failed to satisfy its burden under section 161.001(b)(2) to show that termination of his parental rights was in his children's best interests. *See In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of his parental rights was in the children's best interest can we conclude the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

10

There is a strong presumption that the best interest of a child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of a child in a safe environment is also presumed to be in that child's best interest. *See* § 263.307(a) (West 2019). Section 263.307(b) of the Family Code provides a non-exhaustive list of factors to consider in determining whether the parent is willing and able to provide the child with a safe environment. One of those factors is providing the child with a safe physical home environment. § 263.307(b)(12)(D).

Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The absence of evidence of one or more of these factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See id.* at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the

11

evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Although the evidence at the final hearing did not specifically address each *Holley* factor, the evidence presented by the Department established the children were all doing well in their placements. The foster placements were providing the children with stability and a drug-free environment. All their basic needs were being met. The youngest child's foster parent desired to adopt her and the Department was hopeful the three older children could also be adopted; however, in the interim they had a stable home at Boys Ranch as long as needed.

The caseworker further testified that P.R. failed to show for visits with his children on more than twenty occasions. Additionally, to her knowledge, P.R. did not provide any letters or gifts to the children nor any financial support. She also offered testimony that P.R. failed to comply with a substantial portion of his family service plan for reunification. The caseworker and the attorney ad litem for the children both recommended that termination of P.R.'s parental rights would be in the children's best interests.

Based on the Department's evidence, the trial court's finding that termination of P.R.'s parental rights to his four children is in their best interests is supported by clear and convincing evidence. Issue five is overruled.

**CONCLUSION**

The *Associate Judge's Report and Order* terminating P.R.'s parental rights to E.R., P.R., Jr., S.R., and S.R. is affirmed.

Patrick A. Pirtle
Justice