

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-20-00314-CV
No. 07-20-00316-CV

_____

IN THE INTEREST OF C.R., A CHILD
IN THE INTEREST OF L.F., A CHILD

On Appeal from the 320th District Court
Potter County, Texas
Trial Court Nos. 77,309-D & 80,720-E; Honorable Pamela C. Sirmon, Presiding

February 23, 2021

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, C.R.R., challenges the trial court's orders terminating her parental rights to her daughters, C.R. and L.F.[1]  Through one appellate issue, the mother argues the trial court erred in determining there was sufficient clear and convincing evidence to support

---

[1] To protect the privacy of the parent and her children, we refer to them by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2020).  *See also* TEX. R. APP. P. 9.8(b).

its finding that termination of her parental rights was in the children's best interest.  We will affirm.

### BACKGROUND

C.R.R. is the mother of fourteen-year-old C.R. and ten-year-old L.F.[2]  The Texas Department of Family and Protective Services became involved with the family after receiving information that the mother was using methamphetamine and allowing her children to be left with a relative who had a history of sexually violating children.

The Department removed the children from the mother's care after the mother admitted to using methamphetamine about three times per week and after the children told an investigator that the uncles with whom they were living physically abused them.[3]  The investigator also determined that both children knew exactly where the methamphetamine was located in their aunt's home.

The trial court held a hearing via Zoom[4] in September 2020, during which a Department investigator, a Department caseworker, the mother, and the father of L.F. testified.  At the conclusion of that hearing, the children's attorney ad litem recommended, albeit reluctantly, termination of the parental rights of each of the parents.  The trial court terminated the mother's rights as to both C.R. and L.F. under subsections (D), (E), and

---

[2] The children have different fathers.  Both fathers were incarcerated at points during the pendency of the case.  L.F.'s father remained incarcerated at the time of the final hearing.  Neither father is a party to this appeal.

[3] The caseworker told the court that she spoke with one uncle and he "denied anything had happened."

[4] In response to the imminent threat presented by the COVID-19 pandemic, the Texas Supreme Court has issued numerous emergency orders authorizing "anyone involved in any hearing . . . to participate remotely, such as by teleconferencing, videoconferencing, or other means . . . ."  One such order was effective as of the date of this hearing.

(O) of section 161.001(b)(1) of the Family Code. TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), & (O) (West Supp. 2020). It also found termination of the mother's parental rights was in the best interest of the children. *Id.* at § 161.001(b)(2). A *de novo* hearing was held on October 6, 2020, also via Zoom. In addition to a review of the record from the earlier hearing, the mother was the sole witness at that hearing. An *Order Adopting Associate Judge's Order of Termination After De Novo Hearing* was then signed on October 30, 2020, and the mother provided a timely *Notice of Appeal.*

STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional magnitude. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of maintaining the family unit. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of children are not sacrificed merely to preserve those parental rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and we disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not

3

support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). In such a review, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *In re J.F.C.*, 96 S.W.3d at 266. In doing so, we consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* at 263. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

**APPLICABLE LAW**

The Texas Family Code permits a court to terminate the parent-child relationship if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) and termination of that relationship is in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2) (West Supp. 2020). *See also Holley v. Adams,*

4

544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.206(a-1) (West Supp. 2020). Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *Id.* at § 101.007 (West 2019).

Pursuant to *In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019), due process requires a heightened standard of review of a trial court's findings under section 161.001(b)(1)(D) or (E). Because termination under either of these two subsections may have implications regarding parental rights as to other children, even when another ground for termination is sufficient, we must independently address issues challenging a trial court's findings regarding subsections (D) and (E), and if such finding cannot be sustained, we will consider whether statutory grounds for termination exist under other subsections.

### SECTION 161.001(b)(1)(D)

Subsection (D) permits termination when clear and convincing evidence shows that the parent knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children. *See* § 161.001(b)(1)(D). This subsection requires a showing that the environment in which the children were placed posed a danger to the children's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re J.A.S.*, No. 07-12-00150-CV, 2012 Tex. App. LEXIS 8087, at *14 (Tex. App.—Amarillo Sept. 25, 2012, no pet.) (mem. op.) (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)). Subsection (D) concerns the children's living environment, rather than the parent's conduct, though parental conduct may produce an endangering

5

environment. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The emphasis is on the child's living environment as it existed prior to the child's removal by the Department. As such, the relevant time frame under subsection (D) is prior to a child's removal. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied). It is not necessary that the child's living environment directly threaten the child or that the child be injured, but the parent must at least be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d at 125.

SECTION 161.001(b)(1)(E)

Subsection (E) permits termination when clear and convincing evidence shows that the parent has engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). Under subsection (E), the relevant inquiry is whether there is sufficient evidence that the endangerment of the children's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d at 125; *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Termination under subsection (E) must be based on more than a single act or omission. A voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.*

Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re S.M.L.*, 171 S.W.3d at 477. To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the children nor are the children required to actually suffer injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (reversing appellate court's holding that father's imprisonment did not endanger the emotional and physical well-being of a child). To endanger means to expose something or someone to loss or injury; to jeopardize. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (citing *Boyd*, 727 S.W.2d at 533). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment. *See In re M.C.*, 917 S.W.2d at 269. *See also In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.).

Drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct. *In re R.W.*, 120 S.W.3d 732, 738-39 (Tex. App.—Fort Worth 2004, pet. denied). However, evidence of drug use on its own is not sufficient to show endangerment unless it is causally connected to conduct endangering a child. *In re L.C.L.*, 599 S.W.3d 79, 84 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).

### BEST INTERESTS

In a proceeding seeking to terminate parental rights, the Department is required to prove by clear and convincing evidence that termination of the parental rights is in the children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of the parental rights was in the children's best interests can we conclude the

evidence is legally insufficient. *In re K.M.L.*, 443 S.W.3d at 116 (citing *In re J.F.C.*, 96 S.W.3d at 266).

We begin with a strong presumption that the best interests of the children will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the children's best interests. *See* TEX. FAM. CODE ANN. § 263.307(a) (West 2019). Section 263.307(b) of the Family Code provides a non-exhaustive list of factors to consider in determining whether the parent is willing and able to provide the child with a safe environment. One of those factors is providing the child with a safe physical home environment. *Id.* at § 263.307(b)(12)(D).

Additionally, the Supreme Court has set forth other factors to consider when determining the best interests of children. *See Holley*, 544 S.W.2d at 371-72. Those factors include: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interests of the children; (6) the plans for the children by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The absence of evidence of one or more of these factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the children's best interests. *In re C.H.*, 89 S.W.3d at 27.

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the children's best interests. *Id.* at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, children's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

### ANALYSIS

The record before us demonstrates the mother has struggled with methamphetamine use for some time. The investigator testified the mother admitted to her that beginning in February 2019, she used methamphetamine three times per week. The investigator said the mother used the methamphetamine at her sister-in-law's house and the children were able to tell the investigator the location of that methamphetamine in the home. The caseworker testified that from September 2019 to August 2020, the mother had taken six drug screens, four of which were positive. One test was negative and one was a presumptive positive because the mother did not appear for the screen. The caseworker testified the most recent positive drug test occurred in late May 2020. She also told the court the levels of methamphetamine were significant. On cross-examination, the caseworker agreed the levels of methamphetamine decreased in each test. The mother testified she had not used in approximately seven months because she was pregnant and described herself as a "recovering drug addict." She did, however,

admit to using methamphetamine with her friend Sarah during the pendency of the case. The investigator testified the mother had "some criminal history" and "was actually on probation" at the start of the Department's case. She further testified the mother "had tested positive for her probation officer in June two months prior to my case." A trial court is permitted to consider a parent's history of drug use and irresponsible conduct in its best interest determination. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). The evidence before the trial court concerning the mother's drug use was significant and thus, weighs heavily in favor of the trial court's best interest finding.

The investigator and caseworker also testified that the mother knowingly left her children in the care of one of her uncles, a man who had "sexually violated" her when she was a child. That same uncle also lived with the mother and the children. The mother attempted to excuse this by telling the court that the uncle "wasn't by himself most of the time. He was with my neighbor."[5] The investigator also testified that L.F. told her that on one occasion, she wanted to listen to music in the car. The uncle "threw her against the car" and also "picked her up and threw her out of the car." C.R. told the investigator that she had witnessed that incident between the uncle and L.F. and she acknowledged that the uncle "pushed her." The mother also admitted that L.F. told her that the uncle was "mean to her."

As previously noted, evidence that supports one or more statutory ground for termination may also constitute evidence illustrating that termination is in the best interests of the children. *In re E.C.R.*, 402 S.W.3d at 249-50. Therefore, as the fact

---

[5] She also noted that he was "not a registered sex offender. He never went to prison for it, sir."

finder, the trial court was entitled to consider this testimony regarding the mother's inability to provide her children with a safe home environment as evidence supporting termination pursuant to the grounds set forth in both subsections (D) and (E) of section 161.001(b)(1), as well as evidence that termination was in the children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); § 161.001(b)(2). *See In re D.M., B.W., and J.C.W.*, 58 S.W.3d 801, 804 (Tex. App.—Fort Worth 2001, no pet.) (parent's history and admissions relevant to best interest determination); *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex. App.—Waco 1997, pet. denied) (fact finder may infer that past conduct that endangers the well-being of children may recur in the future if children are returned to the care of the parent). *See also In re M.G.*, No. 07-19-00289-CV, 2020 Tex. App. LEXIS 1103, at *24 (Tex. App.—Amarillo Feb. 7, 2020, no pet.) (mem. op.) (noting same). These circumstances weigh heavily in favor of the trial court's determination regarding the best interests of the children.

Other evidence supports the trial court's finding that termination of the mother's parental rights was in the children's best interests. The caseworker testified that the children were placed together in a foster home in Lubbock where they "seem to be doing really well. They've bonded with these caregivers and have a good relationship." The children appeared to be happy and healthy. Additionally, the placement family desires to adopt the children if reunification with their parents is not possible. The children did not indicate to the caseworker any desire to be returned to their parents' care and the mother did not articulate clear plans for the children. This again weighs in favor of the trial court's conclusion that termination of the mother's parental rights was in the children's best interests.

11

The caseworker further informed the court that the mother told her she had a place to live but the caseworker had not been able to visit because both she and the mother had been ill.[6] The caseworker stated the mother did not have reliable transportation, had not had steady employment "for a long period," and had not demonstrated an ability to provide for the children's basic needs. At the *de novo* hearing, the mother testified she was willing and able to care for her children. She told the court she had a two-bedroom apartment and a vehicle for about three months and was working "cleaning houses and stuff . . . [o]ff and on since June." However, as the children's attorney ad litem pointed out at the *de novo* hearing, the mother had continued to have positive drug screens throughout the pendency of the case, some possibly while pregnant with another child. Further, the mother admitted she lived with and sometimes left the children in the care of her uncle, a man who had sexually abused her when she was a child. At the conclusion of the *de novo* hearing, the attorney ad litem opined it was in the children's best interests that the mother's parental rights be terminated. A parent's drug use and inability to provide a stable home support a finding that termination is in the best interest of a child. *See In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.). Further, a finder of fact is not required to accept the assertions of a parent. *D.F. v. State*, 525 S.W.2d 933, 939-40 (Tex. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Therefore,

---

[6] At one point during the pendency of the case, the mother was exposed to COVID-19 and was required to quarantine herself for a period of fourteen days. This led to several missed counseling appointments, a subject discussed with regard to the mother's completion of her services under the service plan. We do not address the plan in detail herein as the evidence supporting termination pursuant to subsections (D) and (E) is sufficient. We do note, however, that the mother completed all of her services, save two: completion of individual counseling and completion of a sexual abuse class. The availability of the incomplete services was adversely impacted by the COVID-19 pandemic. We do note, as did the Department, that had the mother started her services at the beginning of the case, she would have had a better chance of completing her services without interruption resulting from the pandemic.

the trial court could have reasonably determined that the mother's past endangering conduct would recur if the children were returned to her care.

**CONCLUSION**

Looking to some of the *Holley* factors listed above and based on our review of the record as a whole, we conclude the evidence was capable of producing in the mind of the fact finder a firm belief or conviction that termination of the mother's parental rights was in the best interests of her children. TEX. FAM. CODE ANN. § 161.001(b)(2). Accordingly, we affirm the trial court's orders terminating the mother's parental rights to C.R. and L.F.


Patrick A. Pirtle
Justice